RAYMOND LINDSEY v. STATE OF INDIANA.

[No. 473S71. Filed May 11, 1973.]

*Patrick Brennan, Larry L. Ambler,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

PRENTICE, J.—This case is before us on a petition to transfer from the Court of Appeals, Third District, the decision and opinion of said Court having been filed on May 23, 1972 and reported at 282 N. E. 2d 854. Rehearing was denied June 20, 1972.

Transfer is hereby granted, and said decision of the Court of Appeals, Third District, affirming the trial court is now set aside. The decision of the trial court is reversed and a new trial ordered.

The following alleged errors are assigned:

(1) Refusal of the trial judge to grant a hearing to adjudicate the defendant a criminal sexual psychopath.

(2) Overruling of Defendant's motion for a mistrial predicated upon exposure of the jury to a prejudicial newspaper article.

(3) Overruling of Defendant's motion to suppress identification, such motion being predicated upon an allegedly illegal out of court confrontation.

(1) The defendant (appellant) was charged by way of affidavit with the offense of First Degree Burglary under Acts of 1941, ch. 148, § 4, 1956 Repl. Burns Ind. Stat. Ann. § 10-701(a), IC 1971, 35-13-4-4. The date of the alleged offense was July 3, 1970. The defendant filed a plea of not guilty by reason of insanity and thereafter, on March 15, 1971, filed a motion to be examined as a possible criminal sexual psychopath, under Acts of 1949, ch. 124, §§ 1 thru 4, and Acts of 1959, ch. 356, § 1, 1956 Repl. Burns Ind. Stat. Ann. §§ 9-3401 thru 3404, IC 1971, 35-11-3-1 thru 35-11-3-4, and the court appointed two psychiatrists to examine him and report to the court. On July 11, 1971, the trial court overruled the defendant's request for a hearing to adjudicate the appellant as a criminal sexual psychopath. The aforesaid criminal sexual psychopath act was repealed on April

8, 1971. The defendant contends that the trial court erred in declining to proceed under the criminal sexual psychopath statute, notwithstanding its intervening repeal, inasmuch as it was in effect at the time the alleged crime was committed and the proceedings for such adjudication commenced. We do not meet this issue. At the time of the court's ruling, the defendant merely stood charged with first degree burglary, by breaking and entering, etc. with intent to commit a theft. Where the criminal act charged was not a sex related offense, this Court has held that proceedings under the act were not proper. *State ex rel. Savery etc.* v. *Marion Criminal Ct., etc.* (1955), 234 Ind. 632, 130 N. E. 2d 128. There being no accusation or inference of any sex offense in the charge, the defendant could not, at that time, have been adjudicated a criminal sexual psychopath. Clearly, the defendant was not within the purview of the act.

(2) At the end of the presentation of the State's case in chief, the cause was continued until the following morning and the jury separated. The following morning the defendant filed a motion for mistrial because of a newspaper article that had appeared the evening before in a local newspaper.[1]

---

1. "Burglary, Rape Trial Opens

Initial testimony in the trial of Raymond Lindsey, 22, accused of first degree burglary in a home break-in last July 3 in which a woman was also raped, was expected to begin this afternoon in Superior Court.

Prosecution and defense attorneys were still attempting to select a jury shortly before noon today.

Prior to the opening of the trial, Judge E. Spencer Walton overruled a defense motion that would have suppressed an identification [sic] of Lindsey by the victim during a police lineup last year.

Identifies Suspect

According to testimony from the victim, a 45-year-old South Bend woman, and from policemen working on the case, the victim was taken to Paw Paw, Michigan, on July 12, 1970, where she identified Lindsey as the man who broke into her house.

Lindsey was committed to the Norman Beatty Memorial Hospital, Westville, in 1967, in connection with an attack on a South Bend housewife. Hospital officials authorized him to leave the hospital in May,

The court acknowledged the impropriety and the inherent risk from the publication and that the defendant was entitled to a mistrial, if it had any effect upon the jury. The comments of the court were as follows:

> "And now the defendant files motion for mistrial due to the prejudice created by the news media. I think that we all noticed the story in the paper and which was not based on the evidence in this case. I don't know what it is based upon. I consider it highly improper for the Tribune to publish such a story at this place in the trial. We have two things which we can do here. One is to grant your motion and the other is to complete the trial and on the motion of the created errors if it had any effect on the jury. There is no question but what if it has any effect on this jury that he is entitled to a mistrial."

The motion for mistrial was denied, and the trial proceeded to a verdict of guilty, after which the court conducted an examination of the jury upon the subject of the article. From this examination, it was disclosed that four of the jurors had had no exposure to the article but that eight had had exposure that varied from mere awareness of the publication,

---

1970, to attend a friend's wedding in South Bend. He never returned to the hospital, and was subsequently accused in the July 3 burglary.

Lindsey was being held in the Paw Paw jail on July 12 because he had been arrested that day by Michigan State Police, who charged him with carrying a concealed weapon after they found a handgun in a car in which Lindsey and two others were riding.

The defense had claimed that the woman's identification of Lindsey was improper because two other persons in the viewing room with Lindsey were 'grossly dissimilar' in appearance to the defendant.

Police detective division chief Jerome Perkins, and detective Capt. Frank Arenault, who accompanied the victim to Paw Paw, said the woman's identification of Lindsey was 'immediate,' and that she had previously identified him from police mug files.

#### $25,000 Bond

Judge Walton ruled that it was permissible for police to allow the victim to corroborate her identification of Lindsey's photograph by viewing him in person, and said the identification would have been proper even if Lindsey had been alone in the room.

Lindsey is being held in the county jaul [sic] under $25,000 bond."

which one juror had by reason of her husband's having mentioned it, to knowledge from having read a portion of it only, to two jurors who had read the entire article. Only these two last mentioned jurors were questioned with respect to whether or not their exposure had influenced their decisions, and they stated, under oath that they were not influenced by the article. Accordingly, the verdict was permitted to stand. At the outset, it should be pointed out that the news article was not factual. Both the headline and the opening paragraph alleged a rape. The defendant was not charged with rape, and although there was testimony from which one might speculate that a rape had been committed, we do not consider a rape to have been in evidence. The article also reported a prior commitment of the defendant for an attack upon another woman several years earlier. Neither was this in evidence. Additionally, the article reported that the prosecuting witness had previously identified the defendant from police "mug files." The witness' testimony was that she recognized him when she saw him in person in police custody, but that she could not identify him from the police photographs.

Although we do not here have the kind of intensive and pervasive publicity which was involved in *Estes* v. *Texas* (1965), 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543; *Irvin* v. *Dowd* (1961), 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751; *Sheppard* v. *Maxwell* (1966), 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600, and *Baniszewski* v. *State* (1970), 256 Ind. 1, 261 N. E. 2d 359, and although there has been no showing that the news item prejudiced the jury, we nevertheless, hold that the failure of the trial judge to take remedial action at the proper time was a violation of the defendant's constitutional right to a fair trial. We do not alter our position previously taken that jurors need not be absolutely insulated from all extraneous influences regarding the case and that such exposure, without a showing of influence, will not require a new trial. *Irvin* v. *Dowd,*

*supra, Harris* v. *State* (1967), 249 Ind. 681, 231 N. E. 2d 800. As said by Justice Hunter in *Harris* v. *State, supra:*

> "The rule requires much more than a mere speculation that an article was read by a juror and of course the law also requires more than a mere speculation that a juror had read the article and was prejudiced thereby. We agree with the appellee's position that if the appellant's contention were adhered to it would be impossible to convict any criminal whose trial was reported in the newspaper.
>
> Even if appellant had shown that some member of the jury read the article, it is clear that the reading of a newspaper article pertaining to the case by a juror is not grounds for mistrial, new trial or reversal unless it is shown that the jurors were influenced thereby." 249 Ind. at 694, 695.

This position was reaffirmed in *Napier* v. *State* (1971), 255 Ind. 638, 266 N. E. 2d 199. Our concern here, however, is that we have not heretofore set guidelines for the benefit of the trial judges, in determining the likelihood of prejudice resulting through the news media, standards that are consistent with "fair trial" guarantees. It is not to be concluded that mistrials should be declared upon a showing of any lesser potential for prejudice than now required. Nor do we intend to intimate that trial judges need be intimidated by mere speculation urged by trial counsel seeking delay or tactical advantage by reason of publicity unlikely to contaminate. As aptly stated by Judge Sharp, writing for the Court of Appeals in this matter, "It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors." The trial judge must have much discretion in dealing with such problems. As stated in *Marshall* v. *United States* (1959), 360 U.S. 310, 70 S. Ct. 1171, 3 L. Ed. 2d 1250, *"Generalizations beyond that statement are not profitable, because each case must turn on its own special facts."* (Emphasis ours). The natural and worthy tendency to salvage the trial, however, must be counter-balanced with minimum standards for the protection of the defendant's con-

stitutionally guaranteed right to a fair trial. Such standards have been prescribed by the Seventh Circuit Court of Appeals in *Margoles* v. *United States* (1969), 407 F. 2d 727, *United States* v. *Largo* (1965), 346 F. 2d 253 and *United States* v. *Accardo* (1962), 298 F. 2d 133.[2] In essence these cases hold that whenever prejudicial publicity is brought to the attention of the court, at a minimum it must, at that time, interrogate the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom. The merits of examining separately is two-fold. First, it protects those not already exposed an eliminates the compounding of exposure; and second, it places an exposed juror in the best position possible to disclose the nature and extent of his exposure, possibly his own impropriety, with a minimum of embarrassment, self-consciousness or fear and therefore the maximum possibility of arriving at the truth. At best, jurors are naturally reluctant to admit their own malfeasance, no matter how innocently committed.

The defendant, in this case, was not afforded such minimum protection. The trial judge, although recognizing and acknowledging the problem, in his anxiety to salvage the trial, subjected the defendant to a peril that he should not have been exposed to by continuing the trial and relying upon a post verdict voir dire of the jury, notwithstanding the availability of a better and more reasonable safeguard.

Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collec-

2.  Indiana is the Seventh Circuit.

tively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction.

We reverse the judgment of the trial court herein because in view of the highly prejudicial nature of the publication, the defendant was entitled, as a matter of right, to have the jury polled to determine which jurors, if any, had been exposed to it. Although counsel should have so moved, rather than to ask for a mistrial at that stage, the motion for mistrial and colloquy that followed performed the function of bringing the problems squarely to the attention of the trial judge and should have brought forth appropriate remedial action. The threat of prejudice being substantial, the prime consideration of the trial judge should have been to protect the integrity

of the trial and not to salvage it. That obligation may be satisfied only by taking the best reasonably available steps to assure a verdict free of improper influences and not by proceeding upon the assumption that all may be well and that, if not, it will be detected and rectified later. By diminishing the prospects for detection, the accused was unconstitutionally subjected to a grave peril to which he should not have been subjected. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312.

(3) A third contention of Defendant was that his in-court identification by prosecutrix was tainted by a prejudicial pre-trial confrontation. Upon that issue, we are in agreement with the Court of Appeals, and we adopt its opinion thereon, which is hereinafter set forth, as written by Judge Sharp.

"The offense in this case is alleged to have occurred at a residence in South Bend, Indiana, at approximately 4:30 o'clock A.M. when the occupant of the residence went to the living room of her home to turn off a lamp that had been left burning during the night. At that moment she discovered a man standing in the doorway of the kitchen. The man had apparently gained admission by slashing the screen on the rear door. The witness made a positive identification of the man as being the Appellant. At the time she first saw him in the kitchen doorway he was only three feet away from her and facing her. The light from the lamp was shining directly in his face. She then noticed that there was something wrong with his eyelid. The man demanded money from her and she tried to flee but he caught her in her bedroom. He forced her to hand over money in the amount of $20.00 and struck her several times and threatened her. Sometime later this witness was shown a photograph by the police and stated that a picture of the Appellant bore a strong resemblance to the man she saw in her house on the morning of July 3, 1970. On the 12th of July, 1970, the Appellant was led into a certain room with two other males in a Paw Paw, Michigan, jail for the purpose of lineup identification by this

witness. The Appellant did not have the presence of counsel nor was he notified that he was participating in a lineup. The witness made an identification of the Appellant while viewing the Appellant through the window for about five minutes.

"In the briefs and oral argument the Attorney General has admitted that the lineup in this case was not made under the procedures required by *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 and *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178. However, the Attorney General argues that the identification in this case has an independent source apart from the illegal lineup. In *Gilbert,* the Supreme Court of the United States divided identification into two groups. The first group of witnesses testified on direct examination only that the defendant was the man that robbed them, without mention of any lineup. The lineup was brought out on cross-examination, as it was in this case. In *Gilbert* the second group testified on direct examination that they had viewed the lineup and there identified the defendant as the robber. The illegal lineup was thus used by the State as corroborative evidence of the in-court identification. The Supreme Court in *Gilbert* ruled that as to the second group, who had testified on direct examination of the lineup, evidence of an independent origin could not salvage the conviction. As to the group that, on direct examination, made only an in-court identification, the Supreme Court stated:

'The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but was of independent origin was constitutional error. United States v. Wade, supra. We there held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and *calls in question* the admissibility at trial of the in-court identifications of the accused by witnesses who attended

the lineup. However, as in *Wade,* the record does not permit an informed judgment whether the in-court identifications at the two stages of the trial had an independent source. Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to *afford the State the opportunity to establish that the in-court identifications had an independent source,* or that their introduction in evidence was in any event harmless error.' 388 U.S. at 272, 87 S. Ct. at 1956. (Emphasis added).

"In this case the evidence from an independent source includes the opportunity that the witness had at the time of the offense to examine the burglar's features. When she first saw him in her house that night, he was standing only about three feet away from her, facing her, with a light shining in his face. She was able to see that there was a scar or some other noticeable feature on his eyelid. She also noted the color of pants he was wearing and was able to describe, in detail, his hat. They were also in close proximity for sometime in the bedroom which was partially lighted. In *Fulks* v. *State* (1970), 255 Ind. 81, 262 N. E. 2d 651. Justice Givan, speaking for a majority of our Supreme Court, stated:

'Appellant also claims that the preliminary hearing in the City Court was for all intents and purposes an unlawful lineup.

The United States Supreme Court has held in the cases of United States v. Wade (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and Gilbert v. California (1967), 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, that evidence of identification obtained at a pre-trial lineup is not admissible, if the accused is not represented by counsel or if the lineup is unfair in that it tends to call attention to the accused in an undue manner. However, the cases written by the Supreme Court of the United States on this subject do not require a reversal of the case, if it is clearly demonstrated that notwithstanding irregularities in pre-trial lineup there is positive in-court identi-

fication of the accused, which identification in no way depends upon observatons made of the accused during the improper lineup.

The court in Gilbert, discussing Wade, stated:

"* * * a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical state of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup. However, as in Wade, the record does not permit an informed judgment whether the in-court identifications at the two stages of the trial had an independent source. Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error." 87 S. Ct. at 1956, 18 L. Ed. 2d 1186.

In the Wade case the court stated:

"* * * We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. (Citing case.) Where, as here, the admissibility of evidence of the lineup identification itself is not involved a per se rule of exclusion of court room identification would be unjustified." (Citing cases.) 87 S. Ct. at 1939, 18 L. Ed. 2d 1164, 1165.

'In the case at bar a hearing was had out of the presence of the jury which clearly established that Kennon was the only one of the three identifying witnesses who was in attendance at the preliminary hearing. Kennon was not coached or prompted by anyone. Appellant entered the court room with several others and was immediately recognized by Kennon. Kennon immediately left the court. He could not have been influenced by the court proceedings because he left before they began.

Kennon's in-court identification was based upon his observation of the appellant at the time of the robbery. It is further brought out that the other two identifying witnesses did not attend the pre-trial hearing, did not

discuss the pre-trial hearing with Kennon and had no other comparison by which to identify the appellant in court other than their personal observations of him during the robbery. We, therefore, hold that the requirements set forth in Wade-Gilbert were fully covered by the trial court. There was no error in allowing Kennon to testify concerning the identification of the appellant. Certainly the other identifying witnesses had no connection whatsoever with the pre-trial identification of the appellant thus the admissibility of their testimony is not questioned under the Wade-Gilbert rule.'

"More recently our Supreme Court was confronted with a similar question in *Martin* v. *State* (1972), 258 Ind. 83, 279 N. E. 2d 189, wherein Justice Hunter speaking for the majority laid down the following guidelines:

'It is apparent in this case that appellant was denied his right to counsel guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 13 of the Constitution of Indiana as the lineup took place after his arrest for this offense. However, where admissibility of evidence as to the lineup itself is not involved, a per se exclusionary rule is not justified. Such is the case in this instance. The State asked no questions of the witness concerning the lineup on direct examination and no mention was made of the lineup until cross-examination of the witness by defense counsel. United States v. Wade, supra, holds that the government is required to establish by clear and convincing evidence that the in-court identifications of the defendant were based upon identifications other than that at the lineup. Several factors were mentioned upon which to base this determination. They are as follows:

(1) Prior opportunity to observe the alleged criminal act;

(2) Existence of any discrepancy between any prelineup description and the defendant's actual description;

(3) Any identification of another person prior to the lineup;

(4) Identification of defendant by picture prior to lineup;

(5) Failure to identify the defendant on a prior occasion;

(6) Lapse of time between the alleged act and the lineup description;

(7) Those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. See United States v. Wade, supra, 388 U.S. at 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149.'

"Tested by the above standards there is clear and convincing evidence in the record in this case to establish each of the stated criteria. In fact a much stronger case is presented here on each point than in *Martin*.

"On the basis of the record in this case we find that in-court identification of the Appellant by the prosecuting witness had a sufficient independent origin from the alleged prejudicial pretrial confrontation.

"It would also appear that the evidence of identification from an independent source is well within the rules laid down by Judge Jackson in *Douglas* v. *State* (1970), 254 Ind. 517, 261 N. E. 2d 567."

The judgment of the trial court is reversed and the cause is remanded for a new trial.

DeBruler and Hunter, JJ., concur; Arterburn, C.J., dissents with opinion in which Givan, J., concurs.

### DISSENTING OPINION

ARTERBURN, C.J.—I do not agree that the interrogation of the jurors as to the alleged prejudicial newspaper article should have taken place prior to their retiring for a verdict. As the majority points out, each juror would have had to be interrogated separately as to his knowledge, outside the presence of the other jurors. If the interrogation is done after the verdict is returned, it can be done in the presence of all the jurors and can be done more expeditiously. The same

remedy is available in either case; the judge, after the verdict, can set it aside, grant a new trial, etc.

I point out additionally that if the trial judge had interrogated each juror prior to the verdict with reference to the newspaper item and its contents, more prejudice would likely have resulted by reason of each juror being informed about the matter and the material being emphasized in his mind. Interrogation after the verdict seems to me to be a more proper procedure at a more sensible time .

Neither do I think that the newspaper article was prejudicial. The article referred to rape as part of the burglary. Undoubtedly the jury was entitled to know what happened during the burglary. The newspaper article gave no details. The prosecuting witness testified "he made me go to bed" and "I don't want to talk about it." Any person knows what she was talking about and that rape was involved as part of the burglary. I don't think the jurors got any new information. In addition, no juror under oath admitted that he was influenced by anything he read.

I therefore vote to approve the Court of Appeals opinion. Givan, J., concurs.

NOTE.—Reported in 295 N. E. 2d 819.