**Kenneth GIBBENS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 681S158.**

Supreme Court of Indiana.

April 26, 1982.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On January 6, 1981, Kenneth Gibbens was found guilty by a jury of Burglary resulting in Bodily Injury, a Class A Felony, Ind.Code § 35–43–2–1 (Burns Repl. 1979); Robbery resulting in Bodily Injury, a Class A Felony, Ind.Code § 35–42–5–1 (Burns Repl.1979); and two counts of Criminal Confinement, a Class B Felony, Ind.Code § 35–42–3–3 (Burns Supp.1981). He was also found to be an Habitual Offender. Gibbens was sentenced to imprisonment for thirty (30) years on Count I, Burglary; thirty (30) years on Count II, Robbery; ten (10) years on Count III, Confinement; ten (10) years on Count IV, Confinement; and thirty (30) years for being an habitual criminal. Counts I and II are to be served consecutively, Counts III and IV to be served concurrently with the first two counts. The thirty (30) years for being an habitual criminal are to be served consecutively to Counts I through IV. Gibbens appeals.

Three errors are asserted by defendant, concerning: (1) whether the trial court erred in handling defendant's allegation of prejudicial newspaper publicity; (2) whether the evidence was sufficient to support the jury's verdict; and (3) whether it was reversible error for the trial court not to instruct the jury concerning the penalty to be imposed for the habitual criminal count.

Mr. and Mrs. Cass were an elderly couple who had employed defendant Gibbens to do housework for them in their home in northeastern Indianapolis. Defendant had worked for Mr. and Mrs. Cass for a period from one to two years prior to the crime. Two witnesses testified that they were friends of defendant and that defendant had asked each of them to help him burglarize the victim's home.

Mrs. Cass testified that she had encountered the defendant in Ayres Tea Room about three weeks prior to the crime and at that time she noticed that he was wearing a pair of unusual bright blue trousers. Mrs. Cass had talked to defendant and his friend at that time and defendant's friend recalled that one of the statements Mrs. Cass had made to defendant was: "Oh, Ken, I'd know your voice anywhere."

Mr. and Mrs. Cass slept in separate bedrooms. On March 24, 1980, after Mr. and Mrs. Cass had retired and were sleeping, the defendant kicked open the door of Mrs. Cass' bedroom. He had a mask on his face. Mrs. Cass testified that she recognized the intruder immediately because he aimed a shotgun at her and said: "I want your money; I want your jewelry and I want your diamonds and pearls." Mrs. Cass said she recognized Gibbens' voice and also noticed he was wearing the same bright blue trousers she had seen him wear in Ayres three weeks before. In addition, he had a certain "bouncy" walk that she recognized. The shotgun he had was one that belonged to Mr. Cass. Defendant then rolled Mrs. Cass over on her stomach and pulled her arms behind her back, placing his knee in the small of her back, and tied her arms behind her. In the process he broke three of Mrs. Cass' ribs. He then reached under Mrs. Cass' pillow and removed her pistol. Mrs. Cass testified at trial that defendant Gibbens knew she kept a pistol there.

Defendant also accosted Mr. Cass in his bedroom. When defendant burst into Mr. Cass' bedroom, Mr. Cass was awakened and grabbed at the defendant. Gibbens knocked Mr. Cass down on the bed, tied him up and placed a sack over his head. Mr. Cass said he could not see what was going on after that but he was struck on the head with some object. There was evidence that at least one other person accompanied defendant and they ransacked the home, taking many items of value, including jewelry and a coin collection belonging to Mr. Cass. Mr. Cass estimated the value of the property taken at $125,000 to $175,000. The perpetrators also drove off in the victims' automobile. Robert Schneider, a dealer in scrap silver and gold, testified that he purchased a quantity of gold and silver items from the defendant. These items were identified as being taken from the Cass residence. Mr. Schneider also testified that he received receipts from the items delivered to him by the defendant, which the defendant had signed. A handwriting expert compared the signature on the receipts with a handwriting exemplar provided by the defendant pursuant to court order. The expert testified that Gibbens signed the receipts. Also testifying at the trial were acquaintances of the defendant who testified he attempted to induce them to establish a false alibi for him on the night of the burglary but they declined to do so.

## I.

After the jurors had deliberated for some time, they notified the bailiff that they had reached a verdict and were ready to return it into open court. At this point, defendant's attorney notified the court that he became aware that the *Indianapolis Star* had published a story that morning about the progress of defendant's trial. The last two paragraphs of the article indicated that if the defendant is found guilty he will also face an habitual criminal charge because he had been convicted of previous crimes similar to the ones with which he was charged here. He then moved the court to have the jury interrogated to determine whether or not any of the jurors had read the article

and, if so, whether or not such publicity was likely to prejudice their verdicts. The trial court denied the motion and allowed the jury to come in and return its verdicts.

Defendant relies for his assignment of error on our holding in *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819. In that case the rule had been established that whenever prejudicial newspaper publicity is brought to the attention of the trial court the trial court must interrogate jurors to determine the extent to which the jurors were exposed to the publicity and the likelihood of resultant prejudice. *Id.* at 358, 295 N.E.2d at 824. This rule has been upheld more recently in cases involving publicity that was not necessarily written communication. *Chambers v. State*, (1981) Ind., 422 N.E.2d 1198; *Ferguson v. State*, (1980) Ind., 403 N.E.2d 1373.

Appellant stated that the article in the *Star* had not been seen by him until after the jury had left to deliberate and at about 3:30 in the afternoon. He therefore stated that he could not have raised the issue before the morning session started. He did not, however, raise the question before the court until the court advised counsel that the jury was about to return with its verdict. The newspaper article was never placed in the record, however, either in the trial court or before this Court. The record contains only the bare assertion of defense counsel that such an article appeared. Therefore, neither the trial court nor this Court can assess the likelihood of resultant prejudice. *Sanders v. State*, (1981) Ind., 428 N.E.2d 23, 27.

Furthermore, it appears the State's position is well taken that if any error was committed by the court in its ruling here, it would be harmless error in view of the overwhelming evidence of guilt that was presented to the jury. *See Pettit v. State*, (1979) Ind., 396 N.E.2d 126 (bad quality of audio recording held to be harmless error because of direct and overwhelming evidence of defendant's guilt). As we have pointed out above, the evidence shows that one of the victims was acquainted with

defendant and identified him by his voice, the manner in which he walked and the unusual trousers he was wearing; he was identified by the person to whom he had sold part of the loot and the handwriting expert corroborated this purchaser; acquaintances of the defendant testified that he had tried to induce them to burglarize the victim's house with him and had attempted to establish a false alibi and further made incriminating statements to them. There could not, therefore, be reasonable grounds to feel that the verdicts of guilty could be assigned to the jurors having read the newspaper article.

## II.

Defendant Gibbens was convicted of two class B felonies for the confinement of Mr. and Mrs. Cass pursuant to Ind.Code § 35–42–3–3. This statute makes it a class D felony to confine another person but raises it to a class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person. Defendant does not question the conviction of class B felony in regard to Mrs. Cass but claims in regard to Mr. Cass that there was neither evidence of a serious bodily injury nor evidence from which the jury could find that the defendant had used a deadly weapon. The evidence was that Mr. Cass was struck on the left rear side of his head but he was not sure himself that it caused the area to bleed nor did he receive any medical attention for it. Appellant is therefore correct that Mr. Cass' injury could not be determined to be serious bodily injury since it was not "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ" pursuant to Ind.Code § 35–41–1–2.

However, the statute does say "serious bodily injury to another person" and this encounter did result in serious bodily injury to Mrs. Cass which certainly was a part of the whole transaction in the Cass residence that night.

Further, we find there was evidence from which the jury could have inferred that a deadly weapon was used in defendant's encounter with Mr. Cass. Even though Mr. Cass was not able to say that he saw a weapon used in bringing about his confinement, he testified that he was struck on the head by a hard object that resulted in a wound to his head, and further that defendant used a weapon on Mrs. Cass when he encountered her in her room. In determining sufficiency of the evidence, this court will not weigh the evidence. Rather, the evidence will be found sufficient if, viewing the evidence most favorable to the State and reasonable inferences drawn therefrom, there was substantial evidence of probative value as to every element of the crime charged. *Webb v. State*, (1977) 266 Ind. 554, 364 N.E.2d 1016.

There was sufficient evidence presented to the jury here from which it could reasonably infer that the defendant used a deadly weapon in his encounter and confinement of Mr. Cass.

## III.

Finally, it is defendant's contention that the court erred in refusing defendant Gibben's motion to inform the jury of the mandatory sentence applicable to a finding of guilty in the habitual offender phase of the trial. It is defendant's contention that because a finding of habitual offender requires the court to give a thirty year additional term of imprisonment to be added to the sentence imposed upon the original felony for which he was convicted, that the jury should be informed of such penalty in the final instructions by the court.

We have already decided this issue contrary to appellant's position in *Debose v. State*, (1979) Ind., 389 N.E.2d 272; *see also Williams v. State*, (1981) Ind., 424 N.E.2d 1017; *Taylor v. State*, (1981) Ind., 420 N.E.2d 1231. We held in those cases that the accused in a criminal prosecution has no right to have the jury informed as to the potential penalties since the jury does not engage in the sentencing function. We affirm our position in those cases.

■ Finally, although this issue was not raised on appeal, we note that the trial court sentenced defendant to thirty (30) years on Count V, Habitual Criminal, which sentence was to run consecutively to the sentences on Counts I through IV. This is in error. We have recently dealt with this problem in *Johnson v. State*, (1982) Ind., 432 N.E.2d 1358, where we wrote:

"The enhanced penalty under the habitual criminal statute is imposed for the underlying crime involved in the current proceedings. *Collins v. State*, (1981) Ind., 415 N.E.2d 46. Section 35–50–2–8 (Burns 1981 Supp.) does not impose punishment for a separate crime, but provides a more severe penalty for the crime charged. *Howard v. State*, (1978) 268 Ind. 589, 377 N.E.2d 628, *cert. denied* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708.

The trial court in sentencing should specify which crime is being enhanced by the thirty (30) year term. An habitual offender sentence is an enhanced sentence imposed for the last crime committed, and not an additional penalty for earlier crimes, nor a separate criminal charge. *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902; *Wise v. State*, (1980) Ind., 400 N.E.2d 114. The statute does not establish a new offense or separate crime, but merely provides for the imposition of a greater sentence for the substantive crime charged. *Hall v. State*, (1980) Ind., 405 N.E.2d 530."

We remand this cause for correction of the sentence to reflect proper sentencing procedure. The sentencing statute requires that the defendant, when found to be an habitual criminal, shall be sentenced to an additional thirty (30) years as an enhanced sentence for an underlying felony. The trial court is in all other respects affirmed.

All Justices concur.