# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**LAWRENCE D. NEWMAN**
Newman & Newman, PC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LINDSAY TATUSKO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1208-CR-413 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-1111-FC-16848

**July 11, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Lindsay Tatusko appeals her convictions for forgery, a Class C felony, and theft, as a Class D felony, following a jury trial. Tatusko presents the following issues for our review:

1. Whether she was denied the effective assistance of trial counsel.

2. Whether the State presented sufficient evidence to support her forgery conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 12, 2011, Nicolette Lee purchased a meal at Logan's Roadhouse ("Logan's") in Noblesville, and Tatusko was her server. The final bill for Lee's meal was $14.37. Lee paid with a credit card, which Tatusko ran through a computer to generate two slips of paper, one marked merchant copy and one marked customer copy, for Lee's signature and the addition of any gratuity. On the merchant copy, Lee wrote in a tip in the amount of $2.63, wrote in the total for the charge in the amount of $17, and signed her name.

Sometime thereafter, Lee noticed that the amount of the November 12 charge at Logan's as indicated on the online credit card statement was $19, which was $2 more than the amount she had authorized. Lee telephoned Logan's, asked to speak to a manager, and explained to Chad Keefe, the general manager, the discrepancy in her credit card statement. Logan's issued a credit to Lee's credit card in the amount of $2.

Keefe then verified that Lee's "check was closed out to a different amount than what [Lee had] stated that she had put on the check." Transcript at 158. Keefe then

2

reviewed several of Tatusko's checks from November 12 and he "realized that there was a kind of a pattern" of discrepancies between the amounts written on the actual checks and what Tatusko had indicated were the tip amounts in the restaurant's computer system. Id. at 159. On November 15, Keefe contacted the Noblesville Police Department to report the thefts.

Following the police department's investigation, the State charged Tatusko with forgery, a Class C felony, and theft, as a Class D felony. A jury found Tatusko guilty as charged, and the trial court entered judgment and sentence accordingly. This appeal ensued.

### DISCUSSION AND DECISION

### Issue One: Assistance of Trial Counsel

Tatusko contends that her trial counsel was ineffective when he did not seek a remedy following an allegedly prejudicial remark by a prospective juror during voir dire. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

Here, during voir dire, the trial court inquired of the prospective jurors whether any of them knew Tatusko personally. Juror 34 responded, "The Defendant rented from me. I own a rental property and I had to ask her to leave because of past due bills that she owed me and I kicked her out." Transcript at 38. No one objected or asked follow up questions of Juror 34, and voir dire continued. A short time later, the trial court asked the following questions of the prospective jurors, as a group:

> The Court did read the charging information to you. Do any of you have any personal knowledge concerning the facts in this case? Do any of you remember reading or hearing anything about this case in the media or otherwise? Do any of you feel that a person who's been arrested probably is guilty or else that person would not have been arrested? Do any of you feel that you tend to be biased or prejudiced for or against the State of Indiana or for or against a Defendant in a criminal case? Juror number 34?

Id. at 39. At that point, Juror 34 stated, "Yeah, I—since my relationship with her was not good. . . ." Id. Defense counsel interrupted Juror 34 and requested a side bar conference, which was granted. Defense counsel then asked, "Can we get him out of here?" Id. The trial court responded in the affirmative, and the State did not object. The trial court then informed Juror 34 that he was "excused." Id. at 40. The trial court gave no explanation for Juror 34's dismissal, and nothing further was discussed regarding Juror 34 or his remarks in front of the jury pool.

Tatusko asserts that defense counsel should have "move[d] the trial court to take remedial action to examine each remaining potential juror individually as to whether [J]uror 34's extrajudicial comments had any effect on their ability to remain fair and unbiased so that Tatusko could receive a fair trial." Brief of Appellant at 12. In support of that assertion, Tatusko cites to Lindsey v. State, 260 Ind. 351, 295 N.E.2d 819 (1973).

4

In <u>Lindsey</u>, on the evening after the State had rested its case in the defendant's jury trial, a local newspaper published an article reporting that the defendant

> was an escapee from a mental institution to which he had been committed for attacking a woman. This information was apparently factual but would not have been admissible at his trial. The account also stated that a witness had identified the defendant from police photographs, while in fact she had been unable to do so.

<u>Bruce v. State</u>, 268 Ind. 180, 375 N.E.2d 1042, 1063 (Ind. 1978). On appeal, our supreme court "set forth a procedure for resolving the problem of potential prejudice to the accused by publicity appearing during trial." <u>Id.</u> That procedure is as follows:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction.

5

Lindsey, 295 N.E.2d at 824.

Here, Tatusko contends that her trial counsel's performance was deficient in that he did not ask the trial court to interrogate and admonish the prospective jurors after Juror 34's comments regarding Tatusko's eviction for failure to pay rent. Initially, as the State correctly points out, "[b]ecause [Tatusko] is bringing her ineffective assistance of counsel claim on direct appeal, she has lost the benefit of 'utilizing the broader evidentiary opportunities afforded in post-conviction proceedings.'" Brief of Appellee at 8 (quoting Jewel v. State, 887 N.E.2d 939, 942 (Ind. 2008)). For example, we do not have the benefit of trial counsel's testimony regarding his reason for not requesting a Lindsey interrogation. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and Tatusko must present strong and convincing evidence to overcome this presumption. See Carr v. State, 728 N.E.2d 125, 132 (Ind. 2000).

Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate. Carr, 728 N.E.2d at 131. Here, it is reasonable to assume that defense counsel's strategy in not requesting a Lindsey interrogation was to avoid drawing further attention to Juror 34's brief and isolated remarks. See, e.g., Monegan v. State, 721 N.E.2d 243, 254 (Ind. 1999) (holding trial counsel not ineffective for failing to object to prosecutor's statements in closing, "[I] guess [the defendant] gets high off of hurting people and killing people" and "He's a killer. Don't think for one minute he's not a killer."); Willsey v. State, 698 N.E.2d 784, 795 (Ind. 1998) (holding trial counsel not

6

ineffective where "counsel's failure to object [to comments during State's closing argument] may well have been grounded in a decision that an objection would call undue attention to the State's remark or would be seen by the jury as aggressive and unsympathetic."). Accordingly, Tatusko has not shown either that her trial counsel's performance was deficient or that she was prejudiced by his decision not to seek a Lindsey interrogation. Tatusko was not denied the effective assistance of trial counsel.[1]

## Issue Two:  Sufficiency of the Evidence

Tatusko next contends that the State presented insufficient evidence to support her forgery conviction. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

To prove forgery, the State was required to show that Tatusko, with intent to defraud, did utter a written instrument, namely, a credit card receipt, in such a manner that it purports to have been made with different provisions. See Ind. Code § 35-43-5-2(b)(3). Tatusko's sole contention on appeal is that the evidence is insufficient to prove that she uttered a written instrument. We cannot agree.

---

[1] For the same reasons, we reject Tatusko's claim of fundamental error on this issue. See Monegan, 721 N.E.2d at 254 n.12.

Indiana Code Section 35-31.5-2-345 defines "utter" as to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use. And, as used in the forgery statute, the term "make" means "to draw, prepare, complete, counterfeit, copy or otherwise reproduce, or alter any written instrument in whole or in part." Ind. Code § 35-43-5-1(m). A written instrument is defined as "a paper, a document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings . . . , or other objects or symbols of value, right, privilege, or identification." Ind. Code § 35-43-5-1(t). And Indiana Code Section 26-2-8-106(c) provides that, if a law requires a record to be in writing, or provides consequences if it is not, an electronic record satisfies the law.

Tatusko maintains that "she used Nicolette Lee's credit card to pay for the cost of the Logan's food bill." Brief of Appellant at 20. And she contends that she "would have had to 'hit authorize settle' in Logan's computer system in order to 'print out the merchant copy' along with 'a copy for the guest to take home with them.'" Id. (quoting transcript at 154). Tatusko asserts that

> [t]his act . . . would have all been completed electronically without "uttering" any written instrument to the computer system and Tatusko was authorized by Lee to complete this transaction. Tatusko argues that the evidence indicates that by inputting "authorize settle" into the computer system, the sales transaction was completed. The only remaining matter was the tip amount which is also electronically submitted through Logan's computer system.

Id.

Tatusko then attempts to distinguish this case from Borjas v. State, 946 N.E.2d 1230 (Ind. Ct. App. 2011), trans. denied, where we held that the defendant had uttered a

8

written instrument and committed forgery where she had used someone else's credit card for a purchase and had signed a false name electronically, but no paper receipt contained a signature. Here, Tatusko points out that, unlike the defendant in Borjas, "there is no evidence that she submitted any electronic signature through the credit card transaction at any point to authenticate the sale, as it was already completed." Brief of Appellant at 20. Tatusko maintains that the evidence that she submitted a different tip amount than that authorized by Lee into the computer system does not constitute a violation under the forgery statute.

But we agree with the State that Lee's bill was "not closed out and completed" until Tatusko reviewed the credit card slip, entered the tip amount into the computer, and hit "authorize settle" a second time. Brief of Appellee at 16. And the circumstances in this case are analogous to those in Borjas. Here, had the entire transaction been conducted on paper, Tatusko would have had to change the tip amount in writing, which would have satisfied the elements of the forgery statute, even according to Tatusko. Just because she changed the tip amount electronically does not mean that her conduct falls outside of the statute. Again, Indiana Code Section 26-2-8-106(c) provides that if a law requires a record to be in writing, or provides consequences if it is not, an electronic record satisfies the law. Accordingly, Tatusko's electronic alteration of the authorized tip amount in Lee's transaction constitutes forgery. The State presented sufficient evidence to support her forgery conviction.

Affirmed.

BAILEY, J., and BARNES, J., concur.