## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 18 2017, 10:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm, P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert E. Claudio, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 18, 2017 <br><br> Court of Appeals Case No. <br> 85A02-1611-CR-2709 <br><br> Appeal from the Wabash Circuit Court <br><br> The Honorable Robert R. McCallen, III, Judge <br><br> Trial Court Cause No. <br> 85C01-1509-F5-863 |

**Crone, Judge.**

## Case Summary

Robert E. Claudio appeals his conviction for level 5 felony dealing in a narcotic drug (heroin). He asserts that the trial court erred in failing to question and/or remove a certain juror ("Juror 10"). He also challenges the sufficiency of the evidence to support his conviction. Finding that he has failed to preserve his challenge to Juror 10 and concluding that the evidence is sufficient to support his conviction, we affirm.

## Facts and Procedural History

The facts most favorable to the jury's verdict are as follows. In July 2015, Sheena Stafford was stopped for a traffic infraction in Wabash and found to be driving on a suspended license. An officer from the Wabash Drug Task Force ("DTF") was in the area and came to the site of the stop. Stafford had worked as a confidential informant in a neighboring county, and she suggested that she might work for the Wabash DTF.

A few weeks later, Stafford contacted Claudio and asked whether he had heroin to sell. Claudio answered affirmatively, and Stafford and DTF officers arranged a controlled buy. DTF officers searched Stafford by patting her down, checking all her pockets, and having her shake out her bra. They found her to have no drugs or money on her person or in her clothing. The officers fitted her with audio and video recording devices, gave her the money for the buy, and drove her to an area close to the prearranged location for the buy. Two of the officers watched her up to the corner, and another officer watched her the

remainder of the way to the house. She knocked on the door and was greeted by a female, who led her to a room where Claudio was present with a small child. Claudio led her into the bathroom and shut the door. Stafford told Claudio that she had only forty dollars, and Claudio placed a foil package on the bathroom counter. The package contained 0.10 grams of a powdered substance that subsequently tested positive as heroin. Stafford took the package and left the house. DTF officers listened to Stafford via the audio device at all times preceding, during, and following the consummation of the sale.

[4] After Stafford left the house, DTF officers watched her walk toward the rendezvous spot. Claudio followed her, told her that he was on his way to purchase more heroin, and suggested that she contact him later. When he left, Stafford entered a DTF vehicle and gave one of the officers the foil package containing the heroin. The officer drove her to the pre-buy location, removed her recording equipment, and conducted a post-buy search of Stafford's person and clothing, finding that she possessed no money or contraband.

[5] The State charged Claudio with level 5 felony dealing in a narcotic drug and later added a habitual offender count. On the second day of Claudio's jury trial, a DTF officer informed the prosecutor that one of the jurors, Juror 10, had participated with her boyfriend (a confidential informant) in a controlled buy with the same DTF officers on one occasion within the previous two years. The prosecutor notified the trial court, and the court called a recess to allow Claudio and his counsel to discuss whether to object, question Juror 10, and/or ask for her removal. After the recess, defense counsel informed the court that

Claudio would not ask to have Juror 10 removed and stated that the defense was comfortable with her continued service on the jury. The jury convicted Claudio of level 5 felony dealing, and he waived jury trial on the habitual offender count. The trial court adjudicated him a habitual offender and sentenced him to an aggregate ten-year term.

[6] Claudio now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – Claudio invited any error in the trial court's failure to question and/or remove Juror 10.

[7] Claudio claims that the trial court erred in failing to question and/or remove Juror 10 after being informed that she had participated in a controlled buy with the same DTF officers on one previous occasion. "The right to a jury trial includes 'a fair trial by a panel of impartial, indifferent jurors." *Stephenson v. State*, 864 N.E.2d 1022, 1054 (Ind. 2007) (quoting *Turner v. Louisiana*, 379 U.S. 466, 471 (1965)). Here, the jury was selected and sworn on the first day of trial. At the beginning of day two, a DTF officer informed the prosecutor that Juror 10 had participated in a controlled buy with DTF on a previous occasion. Juror 10's boyfriend was the confidential informant in that case, but she was present during the controlled buy and was subjected to the pre- and post-buy searches. Tr. Vol. 2 at 120-22. The prosecutor informed the trial court, which in turn called a recess to allow Claudio and defense counsel to confer privately to determine whether to object, question Juror 10, and/or request her removal.

When the court reconvened, defense counsel stated, "Judge, we are not asking to have [Juror 10] removed as a juror. We're comfortable going forward with her serving in that capacity." *Id*. at 123. Because Claudio assented to Juror 10 remaining on the jury, he invited the error about which he now complains and is precluded from relief on appeal. *See C.H. v. State*, 15 N.E.3d 1086, 1097 (Ind. Ct. App. 2014) ("invited error is not reversible error"), *trans. denied* (2015).

[8] Though he argues in terms of prejudice and grave peril, Claudio never raised the issue of fundamental error in his initial (and only) appellate brief.[1] He therefore has waived consideration of his juror bias claim as fundamental error. *See Bowman v. State*, 51 N.E.3d 1174, 1179 (Ind. 2016) (finding waiver of fundamental error claim for failure to raise in initial appellate brief).

[9] Notwithstanding, we address Claudio's assertion that the trial court was required to sua sponte question and/or remove Juror 10 pursuant to *Lindsey v. State*, 260 Ind. 351, 358-59, 295 N.E.2d 819, 824 (1973). We disagree and find *Lindsey* distinguishable. There, our supreme court enunciated a process[2] for cases involving possible exposure by jurors to substantially prejudicial publicity which, in that case, was a newspaper publication. *Id*. Here, Claudio highlights

---

[1] "The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) (citation omitted).

[2] In *Lindsey*, our supreme court outlined a process for the trial court to follow in cases involving a suggestion of improper and prejudicial publicity to which jurors may have been exposed: (1) interrogate the jury collectively to determine which, if any, of the jurors has been exposed to it; (2) interrogate and admonish individually and privately any jurors so exposed; (3) collectively admonish the jury; and (4) declare a mistrial sua sponte (if no party has so moved). 260 Ind. at 358-59, 295 N.E.2d at 824.

one experience of a single juror. Instead of objecting and asking for Juror 10 to be interrogated and/or removed, an opportunity specifically afforded him below, he now seeks to be rescued by *Lindsey*, which simply does not apply. We find no reversible error here.

## Section 2 – The evidence is sufficient to support Claudio's conviction.

[10] Claudio maintains that the evidence is insufficient to support his conviction for level 5 felony dealing in heroin. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. (citation omitted).

[11] Claudio asks that we impinge upon the jury's function to judge Stafford's credibility by applying the "incredible dubiosity" rule, which states,

> If a *sole witness* presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted *inherently improbable testimony* or coerced, equivocal, *wholly uncorroborated* testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citations omitted) (emphases added).

[12] Claudio's reliance on the incredible dubiosity rule is misplaced. First, Stafford was not the "sole witness" for the State. Claudio attempts to finesse this requirement by arguing that Stafford was the State's sole witness who could testify whether she purchased bath salts from Claudio and somehow switched them for heroin, as Claudio asserts. Stafford testified that she purchased heroin. DTF officers testified that they searched Stafford immediately before and after the controlled buy and observed her visually and/or through an audio device during all stages of the transaction. She gave the officers the heroin that she had purchased, and the laboratory test confirmed it as heroin. Thus, Stafford's testimony was not "wholly uncorroborated." Nor was it "inherently improbable." Stafford testified unwaveringly that she purchased heroin, not bath salts, from Claudio. The fact that *Claudio* asserted that she purchased bath salts and switched them for heroin does not render *her* testimony internally contradictory. Rather, it simply means that the jury had to decide whose testimony to believe. The incredible dubiosity rule does not apply in this case.

[13] Claudio's remaining arguments (that Stafford is an addict and falsely informed on another individual in the past) amount to invitations to reassess Stafford's credibility, which we may not and will not do. The evidence most favorable to the jury's verdict is sufficient to support Claudio's conviction for dealing in heroin. Accordingly, we affirm.

Affirmed.

Baker, J., and Barnes, J., concur.