**Maurice A. MAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–9710–CR–697.

Court of Appeals of Indiana.

June 18, 1998.

Patrick R. Ragains, Smith, Ragains & Cotton, Anderson, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Maurice A. May appeals his convictions following a jury trial for Battery, a Class D felony;[1] Resisting Law Enforcement, a Class A misdemeanor;[2] Possession of Cocaine, a Class B felony;[3] and Possession of Marijuana, a Class A misdemeanor.[4] May presents one restated issue for our review: whether he was denied the right to a fair trial by an impartial jury.

We affirm.

In the early morning hours of May 4, 1996, Police Officers Steve Ohlheiser and Paul Boulware effected a traffic stop near a high school in Anderson. May, in the backseat, "acted real fidgety." After the officers asked May to exit the vehicle, May ran, discarding a small plastic bag along the way. When the police apprehended May, he struggled, injuring Officer Ohlheiser. The compound in the discarded bag tested positive for cocaine. In addition, police later found marijuana in May's pocket. May was charged with and convicted of Battery, Resisting Law Enforcement, Possession of Cocaine and Possession of Marijuana.[5] He now appeals.

■ Initially, we recognize that May is guaranteed the right to a trial by an impartial jury. *See Belazi v. State*, 525 N.E.2d 351, 351–52 (Ind.Ct.App.1988) (citing U.S. CONST. amend. VI and IND. CONST. art 1, § 13), *reh. denied, trans. denied.* Pursuant to Indiana Trial Rule 47(B), prior to the time the jury returns its verdict, alternate jurors must replace jurors who are unable or disqualified to perform their duties. Trial courts have broad discretion to determine whether to replace a juror with an alternate because they are in a much better position to assess a juror's ability to serve without bias. *Jervis v. State*, 679 N.E.2d 875, 881–82 (Ind. 1997). We reverse the trial court's determination when there is an abuse of discretion, that is, when the decision places the defendant in substantial peril. *Harris v. State*, 659 N.E.2d 522, 525 (Ind.1995).

May first contends that the trial court improperly refused to dismiss a juror after his communication with State witness Officer Ohlheiser during trial.[6] The record reveals that the trial court had directed all jurors to refrain from communicating with witnesses. However, during a lunch recess which interrupted Officer Ohlheiser's testimony, the police officer walked into a local restaurant where Juror Hoover was eating. Officer Ohlheiser greeted Mr. Hoover with whom he was acquainted. During a brief exchange, Mr. Hoover invited Officer Ohlheiser to his house the following week-end to watch a "pay review" of a boxing match. Outside the presence of the jury, the following colloquy occurred:

> Court: Having inadvertently run into Mr. Ohlheiser and having had conversation, do you think you will be able to still be a fair and impartial juror in this case?
>
> Mr. Hoover: Yes, I can't imagine why it would have any effect whatsoever.
>
> Court: And you did disclose during jury selection that you knew Mr. Ohlheiser?
>
> Mr. Hoover: Yes I did.

Record at 195. Officer Ohlheiser confirmed the conversation but noted he had not seen Mr. Hoover in fifteen years. The trial court overruled May's objection and request to replace Juror Hoover with an alternate.

1. IND CODE § 35–42–2–1(a)(2)(A) (Supp.1995).

2. IND.CODE § 35–44–3–3 (1993).

3. IND.CODE § 35–48–4–6(b)(2) (Supp.1995).

4. IND CODE § 35–48–4–11 (1993).

5. May was also charged with False Informing, a Class B misdemeanor, *see* IND CODE § 35–44–2– 2(c)(1) (1993), but was found not guilty of that offense.

6. The record also indicates that Officer Boulware had previously arrested the juror. Record at 255–56. At trial, May did not contest the juror's qualifications based upon this contact, and neither party addresses the incident on appeal.

The Indiana Supreme Court has stated that, because of the fundamental role a jury plays in our system of justice, a rebuttable presumption of prejudice arises where a juror has been involved in out-of-court communications. *Timm v. State*, 644 N.E.2d 1235, 1237 (Ind.1994). Such misconduct generally must be based upon proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred and that it pertained to a matter pending before the jury. *Kelley v. State*, 555 N.E.2d 140, 141 (Ind.1990).

▪ Here, there is no question that the extra-judicial contact occurred. However, by all accounts, Juror Hoover and Officer Ohlheiser met by chance, their conversation was brief, and it did not directly involve the trial proceedings. The brief communication did not, in itself, place May in substantial peril.

▪ We next consider the content of the communication. We agree with May that Juror Hoover displayed a comradery with the witness and, thus, potential partiality. However, the record supports a determination that the underlying social relationship was casual. Furthermore, that social relationship was not a surprise. During voir dire, Mr. Hoover indicated he was acquainted with Officer Ohlheiser. *Cf. Threats v. State*, 582 N.E.2d 396, 398 (Ind.Ct.App.1991) (juror dismissed for failing to disclose he knew defendant's wife at earliest possible time), *trans. denied.* The function of voir dire is to ascertain if jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Bannowsky v. State*, 677 N.E.2d 1032, 1034 (Ind.1997) (citation omitted). May was able to explore the boundaries of any link between Mr. Hoover and Officer Ohlheiser during voir dire and could have sought Hoover's dismissal with a preemptory challenge or a challenge for cause. Objections concerning a juror's qualification must be timely made. *Smith v. State*, 477 N.E.2d 311, 315 (Ind.Ct.App.1985) (defendant waived error in selection of juror who was bailiff's spouse where defendant did not seek to dismiss him from jury service during voir dire).

Further, Juror Hoover assured the court that he would maintain his impartiality. The Indiana Supreme Court has recently acknowledged, "[T]imely disclosure of a juror's casual relationship with a witness or a party, coupled with an assertion that the juror will remain impartial, adequately protect a defendant's right to an impartial jury." *McCants v. State*, 686 N.E.2d 1281, 1285 (Ind.1997). The trial court was in the best position to assess Mr. Hoover's honesty, integrity and his ability to perform as an impartial juror. *See Harris*, 659 N.E.2d at 525–26; *see also, Timm*, 644 N.E.2d at 1235 (upholding denial of mistrial where juror's mother had informed juror that defendant had a prior conviction for murder); *Walker v. State*, 587 N.E.2d 675 (Ind.1992) (upholding refusal to excuse juror where juror called police officer, a personal friend, and inquired about a State witness who had testified), *reh. denied; Creek v. State*, 523 N.E.2d 425 (Ind.1988) (upholding denial of mistrial where juror and nonparty State's witness had casual contact in their mutual place of employment but did not discuss merits of case). We cannot say that May was placed in substantial peril. The trial court did not abuse its discretion in refusing to replace Juror Hoover with an alternate.

May's second argument concerns Juror Troub who, during jury deliberations "when everyone was present," stated that "she just didn't trust [Officer Boulware]" and that "she couldn't or wouldn't be able to make a fair judgment because of that[.]" Record at 477. Apparently the police officer had arrested Mrs. Troub's daughter the night before deliberations began. After an inquiry in which Juror Troub confirmed her animosity toward Officer Boulware, the juror was excused over May's objection and motion for a mistrial.

▪ May first argues that the trial court should not have dismissed Juror Troub. Removing the juror who had admitted her incompetency to serve and thereby entrusting the verdict to an impartial alternate did not gravely imperil May. *Cf. Gavin v. State*, 671 N.E.2d 440, 447 (Ind.Ct.App.1996) (removing an impartial juror who had voted to acquit gravely imperiled defendant). The trial court properly replaced Juror Troub with an alternate juror.

In a related argument, May insists that the court's failure "to call all the jurors back into court and admonish them regarding the situation with Mrs. Troub" constituted reversible error. May bases his argument solely upon this court's decision in *Threats,* 582 N.E.2d at 396, where we reversed the defendant's conviction because the trial court failed to take prompt remedial action to ensure a juror's removal did not improperly influence the other jurors. *Threats* relied upon *Lindsey v. State,* 260 Ind. 351, 295 N.E.2d 819 (1973) wherein the Indiana Supreme Court directed that, when an event occurs which may improperly affect the jury, "the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the [alleged prejudicial event] and the likelihood of its having come to the attention of any juror." *Id.* at 358, 295 N.E.2d at 824. However, the trial court must interrogate the jury collectively only if it determines, in its discretion that "the risk of prejudice appears substantial, as opposed to imaginary or remote." *Id.*

Here, the trial court did not summon the jurors as a group or as individuals and admonish them regarding Mrs. Troub's removal. Instead, after dismissing the juror, the court stated, "I might interrogate [the jury foreman] some more in regards to whether or not I should bring [in] the whole jury panel to give them an admonishment that they should disregard the experience with Mrs. Troub. So any objection to me proceeding in that manner?" Defense counsel replied, "No your Honor." Record at 487–88. Thereafter, the jury foreman opined the court did not need to summon the jurors and admonish them regarding the incident. The court accepted the jury foreman's assessment, and May did not pursue the matter.

■ While we do not endorse the questioning of a jury foreman rather than the jurors themselves in order to determine the likelihood of prejudice at this sensitive stage of the trial, here May affirmatively agreed to that procedure. Without discussing her daughter's arrest, Mrs. Troub had told the other jurors that she could not be fair; thus, the reconstituted jury panel was not left to speculate about the reason for her dismissal.

After questioning Juror Troub and the jury foreman, the trial court was satisfied that the threat of contamination was not substantial so as to require examination of the remaining jurors. Apparently, defense counsel was similarly persuaded. We will not disturb that threshold determination. May has not demonstrated reversible error.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.