Shannon MORGAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0808–CR–493.

Court of Appeals of Indiana.

April 7, 2009.

Transfer Denied June 16, 2009.

Ellen M. O'Connor, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Shannon Morgan appeals his convictions

for murder[1] and robbery as a class B felony.[2] Morgan raises two issues, which we revise and restate as:

I. Whether the trial court abused its discretion and violated Morgan's confrontation rights by admitting two discovery depositions;

II. Whether the trial court abused its discretion by denying Morgan's motion to dismiss two jurors where the jurors were exposed to publicity regarding a witness's disappearance;

III. Whether the trial court abused its discretion by denying Morgan's motion for a mistrial; and

IV. Whether the trial court abused its discretion by denying Morgan's motion to set aside the verdict.

We affirm.

The relevant facts follow.[3] Sixty-eight-year-old Richard Hager lived on Epler Avenue in Indianapolis and operated a business in his garage selling eggs, produce, and bait for fishing. On June 1, 2007, Morgan, Jennifer Jackson, and Donald Stewart went to Hager's residence to purchase some bait. Morgan discussed the bait with Hager, but he did not have enough money to buy the bait. As they were leaving, Hager made a joking comment about Morgan's pants falling down. After they retrieved some money, Morgan, Jackson, and Stewart returned to Hager's garage. Hager sold Morgan the bait and gave Morgan a homemade belt.

On June 6, 2007, Hager's neighbor saw him at 8:45 p.m., as Hager was walking from his garage to his house. That night Morgan and Frank Price went to Hager's residence where they demanded money, hit him on the head with a gun, and shot him in the back and the head. Morgan and Price ransacked Hager's residence and took guns, tools, and cash.

When Hager's neighbor left for work at 5:20 a.m. the next morning, he saw that Hager's garage door was open and that the lights were on in the garage, which was unusual. During the day, other neighbors noticed that Hager's dogs were running loose, went to Hager's house, and discovered his body.

Shortly thereafter, Morgan told Jackson to "watch the news." Transcript at 87. Morgan later told Jackson that he and Price robbed Hager. He told her that they hit Hager on the side of the face, that they shot Hager, and that they took $900.00 from him. Morgan later left numerous threatening messages on Jackson's voicemail.

Morgan also told Shana Belcher that "there was an armed robbery that went bad and [he] shot the guy in the head." *Id.* at 415. Morgan threatened Belcher, saying that he "would put a bullet in [her] head, just like that n* * * * * on Epler." *Id.* at 413. On June 22, 2007, Belcher was talking to a detective who was investigating a burglary of her residence. She asked if it was true that someone had been shot in the head on Epler. Belcher provided information regarding Hager's injuries that had not been released to the public. After providing information regarding Morgan to Detective Marcus Kennedy, Belcher received a $1,000.00 reward through Crime Stoppers.

---

1. Ind.Code § 35–42–1–1 (Supp.2007).

2. Ind.Code § 35–42–5–1 (2004).

3. Ind. Appellate Rule 46(A)(6)(a) requires that facts be supported by page references to the Record on Appeal or the Appendix. We note that many of the facts cited in Appellant's Brief are not supported by page references to the transcript or appendix, which hampered our review of this matter. In fact, it appears that Appellant's Brief is a draft document.

The State charged Morgan with murder, felony murder, and robbery as a class A felony. Ocie Brasher was Morgan's friend, and in March 2008, they were incarcerated in the Marion County Jail at the same time. Brasher was in jail on robbery and habitual offender charges. Morgan told Brasher that he and Price had robbed and killed Hager. After ransacking Hager's residence, they put the stolen property in a rug, rolled it up, and carried it to their vehicle. Morgan also said that he hid the gun in bushes behind the "old fire station" but that he had asked Jackson to "take care" of it for him. *Id.* at 617, 620.

Brasher informed the police about Morgan's statements, and after being released from jail, Brasher went to the old fire station with Detective Kennedy. However, they could not locate the weapon. While with Detective Kennedy, Brasher called Jackson, who said that she "took care of that business." *Id.* at 623. As a result of his help, Brasher was released from jail pending his trial on the robbery and habitual offender charges, but he regularly maintained contact with Detective Kennedy.

At Morgan's jury trial, Belcher's discovery deposition was read to the jury over Morgan's objection. Belcher was unavailable because, although she was deposed on November 7, 2007, she died of a drug overdose prior to trial. Additionally, Brasher was subpoenaed to testify at Morgan's trial. He appeared as required, and the victim's advocate escorted him to the witness waiting room. However, he disappeared from the witness waiting room before he testified. The trial court issued a warrant for Brasher's arrest. That same morning, Brasher's mother received several telephone calls, and the caller stated that he had her son and she "better get [her] black dress ready." *Id.* at 320. Various agencies and approximately fifty officers attempted to locate Brasher. Over Morgan's objection, Brasher's deposition was read to the jury.

At the start of the final day of the trial, the trial court asked the jurors if they had heard anything about the case since court had been adjourned. Six jurors indicated they had, and the trial court questioned seven jurors individually. Several of the jurors indicated that they heard something through the media or relatives about Brasher's disappearance. Morgan then moved to remove two jurors, Juror Jackson and Juror Peyton, but the trial court denied the request, finding that both jurors were "emphatic that they could follow the Court's instruction [and] would base their decision solely upon the record as it . . . is today." *Id.* at 567.

Morgan moved for a mistrial based upon the State's "wrongdoing" related to Brasher's disappearance and based upon several jurors' knowledge of Brasher's disappearance. *Id.* at 561. The trial court denied Morgan's motion for a mistrial. The jury then found Morgan guilty as charged.

On July 14, 2008, Brasher was located at a residence in Indianapolis, and he was not being held against his will. Brasher was found in contempt and was also charged with obstruction of justice as a class D felony. He later pled guilty to obstruction of justice and admitted that he absconded from the courthouse on the morning that he was supposed to testify. Morgan filed a motion to set aside the verdict pursuant to Ind. Trial Rule 60(B) as a result of Brasher's arrest. The trial court denied Morgan's request.

The trial court entered judgment of conviction as to murder and robbery as a class B felony due to double jeopardy considerations. The trial court sentenced Morgan to sixty years for the murder conviction and a consecutive sentence of fifteen years

on the robbery conviction for an aggregate sentence of seventy-five years in the Indiana Department of Correction.

## I.

 The first issue is whether the trial court abused its discretion and violated Morgan's confrontation rights by admitting Belcher's and Brasher's discovery depositions. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Garner v. State*, 777 N.E.2d 721, 724 (Ind.2002); Ind. Evid. R. 801(c). "Generally, deposition testimony of an absent witness offered in court to prove the truth of the matter asserted constitutes classic hearsay." *Garner*, 777 N.E.2d at 724. Exceptions to the hearsay rule are found in Indiana Evidence Rule 804, which allows the use of prior recorded testimony in lieu of live testimony in certain circumstances. *Id.* "The decision to invoke the rule allowing admission of prior recorded testimony such as a deposition, is within the sound discretion of the trial court." *Id.*

Ind. Evidence Rule 804(b) provides that a prior deposition is "not excluded by the hearsay rule if the declarant is unavailable as a witness" and "if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." A witness is "unavailable" if the witness:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means.

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

Ind. Evidence Rule 804(a).

 Also at issue here is the Sixth Amendment to the United States Constitution, which provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." "The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him." *Howard v. State*, 853 N.E.2d 461, 465 (Ind.2006) (citing *State v. Owings*, 622 N.E.2d 948, 950 (Ind.1993)). In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that "the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination." *Howard*, 853 N.E.2d at 465.

### A. *Belcher's Deposition.*

 Morgan argues that Belcher's deposition was inadmissible under Ind. Evidence Rule 804 because he did not have a

"similar motive to develop the testimony by direct, cross, or redirect examination" in the discovery deposition as he would have had in live trial testimony or a trial deposition. Ind. Evid. R. 804(b). Morgan contends that Indiana "should distinguish between discovery and trial preservation depositions" because the "motive and manner of questioning are not the same." Appellant's Brief at 21.

Indiana courts have previously addressed and rejected this argument. The Indiana Supreme Court held in *Smith v. State,* 702 N.E.2d 668, 675 (Ind.1998), that the trial court did not abuse its discretion by admitting the discovery deposition of a DNA analyst. The Court held that the defendant "had the same motives [in taking the discovery deposition] as he would have had at trial." 702 N.E.2d at 675. Similarly, in *Hagerman Constr., Inc. v. Copeland,* 697 N.E.2d 948, 953 (Ind.Ct. App.1998), *trans. denied,* the appellant argued that a discovery deposition should not have been admitted because appellant did not have a similar motive to cross examine during a discovery deposition as opposed to a trial deposition. We held that "[t]he Indiana Rules of Trial Procedure do not recognize such a distinction." 697 N.E.2d at 953. We noted that the appellant extensively cross examined the deponent at the discovery deposition and, although the appellant "may have anticipated that [the deponent] would testify at trial and be subject to further cross-exami-

nation, we do not discern that its motive during the taking of [the deponent's] deposition was any different." *Id.*

Here, Morgan took Belcher's deposition and extensively questioned her regarding her relationship with Morgan and her motive in collecting the reward money and receiving housing assistance. As in *Smith* and *Hagerman Constr.,* we conclude that Morgan had a "similar motive to develop the testimony by direct, cross, or redirect examination" in the discovery deposition as he would have in live trial testimony or a trial deposition.[4] Ind. Evid. R. 804(b).

██ Moreover, to the extent that Morgan argues his confrontation rights were violated by the admission of Belcher's deposition, we conclude that, although Belcher's deposition was testimonial and she was clearly unavailable, Morgan did not lack a prior opportunity for cross-examination. *See Howard,* 853 N.E.2d at 465 ("[W]itness statements made during depositions are generally understood and widely recognized as testimonial."). The Indiana Supreme Court addressed a similar issue in *Howard.* There, the defendant argued that a child victim's discovery deposition was inadmissible in part because he had no "adequate opportunity" to cross examine the child in the discovery deposition. *Id.* at 469. The Court noted that the defendant's counsel conducted a lengthy and vigorous examination of the victim during the deposition and, "perhaps

---

4. We acknowledge that in *Howard,* 853 N.E.2d at 468–469, the Indiana Supreme Court noted that "trial counsel's motivation for taking a deposition solely for the purpose of discovery may differ from that of a deposition to perpetuate testimony." However, the Court made this comment in the context of determining the defendant's confrontation rights, not in analyzing Ind. Evidence Rule 804. 853 N.E.2d at 468–470. Further, the Court ultimately rejected the argument, holding that:

> [A]lthough Howard contends that the purpose of the deposition in this case was "for discovery" only, counsel for Howard nonetheless conducted a vigorous and lengthy examination. The deposition lasted approximately two hours and resulted in ninety-two typewritten pages, nearly all of which constitute counsel's examination of C.C. Appellant's App. Vol. II. We thus disagree with Howard's claim that he was denied his right of confrontation.

> *Id.* at 469 (footnote omitted).

more importantly, *Crawford* speaks only in terms of the 'opportunity' for adequate cross-examination." *Id.* at 469–470. "Whether, how, and to what extent the opportunity for cross-examination is used is within the control of the defendant." *Id.* The Court concluded that the defendant had the opportunity to confront the witness at the time of the discovery deposition. *Id.* Similarly, here, Morgan had the opportunity to examine Belcher, and his confrontation rights were not violated. We conclude that the trial court did not abuse its discretion by admitting Belcher's deposition.

### B. *Brasher's Deposition.*

█ Morgan argues that the trial court abused its discretion by finding Brasher to be "unavailable." Although Morgan concedes that a fugitive can be declared unavailable, he argues that Brasher should not be considered unavailable due to the State's "negligence" in failing to monitor him appropriately. Appellant's Brief at 23.

Ind. Evidence Rule 804(a)(5) provides that a witness is unavailable if the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means." However, the rule also provides: "A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." Ind. Evid. R. 804(a). Morgan attempts to equate the State's alleged "negligence" with "wrongdoing." Morgan's argument is unpersuasive because the "wrongdoing" must be for the "purpose of preventing the witness from attending or testifying." There is no evidence that the State's al-

leged failure to monitor Brasher more closely was for the purpose of preventing him from testifying. Further, after Brasher was released from jail, Brasher maintained regular contact with Detective Kennedy. The State served Brasher with a subpoena for his testimony in Morgan's trial and had a victim's advocate escort him to the witness waiting room on the morning of his testimony. After he disappeared, the State initiated an extensive search for Brasher. We conclude that the trial court did not abuse its discretion when it found the State was unable to procure Brasher's attendance by process or other reasonable means. Consequently, the trial court did not abuse its discretion by finding Brasher to be unavailable for purposes of Ind. Evidence Rule 804.

█ In the context of Morgan's confrontation rights, the Indiana Supreme Court has held that "[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial." *Garner,* 777 N.E.2d at 724. Based on the facts above, we conclude that the State made a good faith effort to obtain Brasher's presence at trial, and Morgan's confrontation rights were not violated.

### II.

█ The next issue is whether the trial court abused its discretion by denying Morgan's request to dismiss two jurors where the jurors were exposed to publicity regarding Brasher's disappearance. Morgan argues that Juror Peyton and Juror Jackson should have been dismissed because they were exposed to the publicity and "downplayed the extent that they discussed the missing witness." Appellant's Brief at 26. During the trial, the trial court learned that several jurors had been exposed to publicity and information con-

cerning Brasher's disappearance. Seven jurors indicated they had been exposed to such information, and the trial court questioned those jurors individually. Morgan argued at trial and on appeal that only Juror Jackson and Juror Peyton should have been dismissed.

Juror Jackson indicated that she heard on the 10:00 p.m. news the night before that a witness was missing and Morgan's name was mentioned. Juror Jackson indicated that Brasher's disappearance was "mentioned" but not "discussed" in the jury room. Transcript at 496. She indicated that the information would not have any influence on her, that she would base her decision on the evidence, that she would not be prejudiced against Morgan as a result of the information, and that she would disregard any information she heard on the news broadcast.

Juror Peyton informed the trial court that his mother had called him that morning and told him that a witness was missing in a murder trial. She asked him if he was a juror on that trial. Juror Peyton also overheard Juror Jackson say that the missing witness was Brasher. Juror Peyton indicated that he could still be fair and impartial, that he could base his decision solely on the evidence presented, and that he would not be prejudiced as a result of hearing the information.

Other jurors indicated that Juror Jackson and Juror Peyton had mentioned the missing witness in the jury room. Although Morgan requested that Juror Jackson and Juror Peyton be dismissed, the trial court denied his motion. The trial court noted:

> The motion for excluding Ms. Jackson and Ms. Peyton I believe was based on the fact that they were not forthright. The Court does not believe, while there may have been some inconsistency in their response as to what others indicat-

ed, the Court didn't find any intentionality in that. Court had an opportunity to observe their demeanor as they discussed their information. Both witnesses were emphatic that they would not hold it against the State of Indiana, hold it against the defendant; that they were emphatic that they could follow the Court's instruction, would base their decision solely based [sic] upon the record as it, as it is today. The Court denies the defendant's motion to have those jurors excluded.

Transcript at 567.

■■■■ "Article I, § 13, of the Indiana Constitution guarantees a defendant's right to an impartial jury; therefore, a biased juror must be dismissed." *May v. State*, 716 N.E.2d 419, 421 (Ind.1999). Ind. Trial Rule 47(B) provides in part, "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Further, Ind. Jury Rule 24 provides:

> If the court receives information that a juror has personal knowledge about the case, the court shall examine the juror under oath in the presence of the parties and outside the presence of the other jurors concerning that knowledge.

> If the court finds that the juror has personal knowledge of a material fact, the juror shall be excused, and the court shall replace that juror with an alternate. If there is no alternate juror, then the court shall discharge the jury without prejudice, unless the parties agree to submit the cause to the remaining jurors.

"Trial courts have broad discretion in determining whether to replace a juror with an alternate, and we will only reverse such determinations where we find them to be

arbitrary, capricious or an abuse of discretion." *May*, 716 N.E.2d at 421.

■■ "In cases alleging juror misconduct involving out-of-court communications with unauthorized persons, a rebuttable presumption of prejudice exists." *Id.* "Such misconduct must be based on proof, by a preponderance of the evidence, that an extrajudicial contact or communication occurred and that it pertained to a matter pending before the jury." *Id.* Typically, "[t]he trial court [is] in the best position to assess the honesty and integrity of [a juror and their] ability to perform as a conscientious, impartial juror." *Id.* (quoting *Harris v. State*, 659 N.E.2d 522, 525 (Ind. 1995)). "As such, our review of the trial court's decisions in these matters is highly deferential." *Id.*

Here, both jurors admitted exposure to information regarding Brasher's disappearance. However, both jurors indicated that they could disregard the information and base their decision solely upon the evidence presented at trial, and the jurors were admonished that their decision must be "exclusively, solely based on the evidence that [they heard] from the witness stand" and that they were not to consider outside sources. Transcript at 573. "We presume that the jury follows the trial court's instructions." *Harris v. State*, 824 N.E.2d 432, 440 (Ind.Ct.App.2005). The trial court had the opportunity to observe the demeanor of these two jurors and concluded that they were "emphatic" that they could follow the trial court's instruction. Transcript at 567. Given our deference to the trial court in these matters, we conclude that the trial court did not abuse its discretion by denying Morgan's request to dismiss the two jurors.

## III.

■ The next issue is whether the trial court abused its discretion by denying Morgan's motion for a mistrial. Morgan requested a mistrial based upon the State's "wrongdoing" regarding Brasher's absence and the jurors' knowledge of Brasher's disappearance. Transcript at 561. The trial court denied Morgan's motion for a mistrial. The trial court noted its finding of no wrongdoing by the State in the context of Ind. Evidence Rule 804 and further found as follows:

> Court would note in denying the motion for mistrial in terms of the jurors being tainted, each and every juror has come in and indicated what they have heard. None of them have indicated that it would affect their impartiality toward the defendant or the State of Indiana, and that they can follow the Court's instructions on the law and make their decision based solely on the evidence. The Court denied motion for mistrial on both counts.

*Id.* at 562.

■■ "We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in 'the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind.2008) (quoting *McManus v. State*, 814 N.E.2d 253, 260 (Ind.2004), *reh'g denied, cert. denied*, 546 U.S. 831, 126 S.Ct. 53, 163 L.Ed.2d 83 (2005)). "A mistrial is appropriate only when the questioned conduct is 'so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected.'" *Id.* (quoting *Mickens v. State*, 742 N.E.2d 927, 929 (Ind.2001)). "The gravity of the peril is measured by the conduct's probable persuasive effect on the jury." *Id.*

First, we have already noted that the trial court found no "wrongdoing" by the State in the context of Ind. Evidence Rule 804. As a result of his help, Brasher was

released from jail pending his trial on the robbery and habitual offender charges, but he regularly maintained contact with Detective Kennedy. Brasher was subpoenaed to testify at Morgan's trial. He appeared and was escorted to the witness waiting room by a victim's advocate, but he disappeared from the room before he testified. The trial court issued a warrant for Brasher's arrest, and various agencies and approximately fifty officers attempted to locate Brasher. Although Morgan implies "wrongdoing" on the part of the State, we agree with the trial court that Morgan failed to demonstrate any such wrongdoing. Consequently, the State's alleged "wrongdoing" was not a basis for mistrial.

 Further, as for Morgan's allegations that the jury was tainted, we note that the trial court followed the procedures outlined in *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (Ind.1973).[5] The trial court admonished the jurors individually and collectively to disregard the publicity and avoid contact with further publicity.

In *Lindsey*, the Court held: "If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction." *Lindsey*, 260 Ind. at 359, 295 N.E.2d at 824.

We cannot say that the jurors' exposure here was "so prejudicial and inflammatory that [Morgan] was placed in a position of grave peril." *Pittman*, 885 N.E.2d at 1255. While some of the jurors had received information that a witness had disappeared, all of the jurors at issue indicated that they could disregard the information and base their decision solely upon the evidence presented at trial. Further the trial court admonished the jurors that their decision must be "exclusively, solely based on the evidence that [they heard] from the witness stand" and that they were not to consider outside

---

5. In *Lindsey*, the Indiana Supreme Court held:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury

> should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction.

> *Lindsey*, 260 Ind. at 358–359, 295 N.E.2d at 824.

sources. Transcript at 573. "We presume that the jury follows the trial court's instructions." *Harris*, 824 N.E.2d at 440. Under the circumstances presented here and given the other evidence presented at the trial, we cannot say that knowledge by some of the jurors of Brasher's disappearance had a probable persuasive effect on the jury.

### IV.

■ The final issue is whether the trial court abused its discretion by denying Morgan's motion to set aside the verdict. Morgan argues that he was entitled to have the jury's verdict set aside based upon "the newly discovered evidence of Ocie Brasher's arrest and current availability for cross-examination." Appellant's Brief at 29.

The Indiana Supreme Court has held that "[i]n order to obtain relief because of newly discovered evidence, the defendant must show that (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result." *Allen v. State*, 716 N.E.2d 449, 456 (Ind.1999). We analyze "these nine factors with care, as 'the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006) (quoting *Carter v. State*, 738 N.E.2d 665, 671 (Ind.2000)).

■■ "The movant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial." *Allen*, 716 N.E.2d at 456. "Although determining the credibility of wit-

nesses is normally the function of the jury, when ruling on a motion for new trial based on newly discovered evidence the trial court must assess the credibility of any proffered new evidence." *Id.* "We review the trial court's ruling for an abuse of discretion." *Id.*

Morgan argues that the trial court should have granted a new trial because the jury would have benefited from Brasher's live testimony and from the knowledge that he was not kidnapped. Morgan contends that Brasher's "live presence for full cross-examination, exploration of the benefit of his bargain with the State, and impeachment was extremely material and relevant and definitely not cumulative or merely impeaching." Appellant's Brief at 29.

■ Morgan presented evidence that Brasher had been found in Indianapolis, that he had not been abducted, and that he had been arrested. However, this information does not qualify as "newly discovered evidence." First, although the evidence may have been impeaching as to Brasher, "newly discovered evidence cannot be merely impeaching." *Thompson v. State*, 796 N.E.2d 834, 840 (Ind.Ct.App. 2003), *reh'g denied, trans. denied.* Further, "[i]n ruling on whether the evidence would produce a different result, the trial court may properly consider the weight that a reasonable trier of fact would give it and while so doing may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Id.* While the evidence may have been impeaching as to Brasher, the evidence does not "destroy[ ] or obliterate[ ] the testimony upon which [the] conviction was obtained." *State v. McCraney*, 719 N.E.2d 1187, 1190 (Ind.1999) (quoting *Wilson v. State*, 677 N.E.2d 586, 588 (Ind.Ct.App.1997)). As the State points out, Jackson and Belcher's

testimony was sufficient to support Morgan's convictions even if Brasher's testimony was "totally disregarded by the jury." Appellee's Brief at 23. We conclude that the alleged "newly discovered evidence" would not likely have produced a different result in a new trial. *See, e.g., Thompson,* 796 N.E.2d at 840 (holding that the defendant's evidence did not qualify as "newly discovered evidence").

For the foregoing reasons, we affirm Morgan's convictions for murder and robbery as a class B felony.

Affirmed.

CRONE, J. and BRADFORD, J. concur.