**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 16 2014, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TRAVIS BOOKER,                        )
                                      )
    Appellant-Defendant,             )
                                      )
      vs.                           )   No. 48A05-1312-CR-623
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.              )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1111-FB-2039

**September 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Travis Booker ("Booker") challenges his conviction and sentence for Robbery, as a Class B felony.[1]  We affirm.

**Issues**

Booker raises three issues for review, which we restate as:

I.      Whether the trial court abused its discretion when it denied Booker's request to replace a juror with an alternate;

II.     Whether the trial court abused its discretion when it excluded evidence related to a witness's drug use; and

III.    Whether his sentence is inappropriate.

**Facts and Procedural History**

On July 5, 2011, a friend of Marcus Hayes-Patterson ("Hayes-Patterson") drove Booker and Hayes-Patterson to a Key Bank in Anderson, Indiana.  Booker and Hayes-Patterson entered the bank, each wearing a mask and armed with a handgun.  Hayes-Patterson also carried a police radio scanner.  The two men drew their weapons and ordered the bank employees and customers to get down on the ground.  Booker jumped behind the teller counter.  Meanwhile, the bank manager pushed the alarm button.  After Hayes-Patterson heard the robbery reports on the police scanner, he and Booker exited the bank with over $5,000 in cash.  They attempted to flee using a getaway car Hayes-Patterson had parked behind the bank earlier that morning.  However, Hayes-Patterson had forgotten the keys.

---

[1] Ind. Code § 35-42-5-1 (2011).  In light of the significant revisions to the Indiana Code effective July 1, 2014, all statutory citations to substantive criminal provisions refer to the versions of these statutes effective at the time of the trial-level proceedings.

2

Booker and Hayes-Patterson instead fled on foot to the nearby home of Kylie Stephenson ("Stephenson"), a friend of Hayes-Patterson. They told her they had been in a fight and needed a place to wait for a ride. Hayes-Patterson called his friend Antwoine Kimbrough, who picked up Hayes-Patterson and Booker from Stephenson's home and took them to Booker's girlfriend's house. Booker and Hayes-Patterson divided equally the robbery proceeds.

A police investigation of the robbery eventually led to Booker's arrest. On November 4, 2011, Booker was charged with Robbery, as a Class B felony. A jury trial was held on October 29 and 30, 2013.

During a recess on the first day, juror Lisa Moore ("Moore") spoke with one of the State's witnesses, Johnathon Terhune ("Terhune"), outside of the courtroom while Terhune was waiting to testify. Terhune managed the McDonald's restaurant at which Booker worked in 2011. Moore was acquainted with Terhune because he was her husband's boss at the time of trial. Moore began talking with Terhune, but when she realized that he was there to testify, she terminated the conversation. Outside the presence of the other jurors, the trial court interrogated Moore about the relationship and conversation and whether these interactions would affect her ability to be fair and impartial. Moore said they would not. Booker then requested that Moore be replaced by an alternate juror. The trial court denied his request.

During the State's case-in-chief, Stephenson testified on direct examination that she used drugs and drank alcohol on July 4, 2011, the night before the robbery. On cross

3

examination, outside the presence of the jury, defense counsel made an offer of proof regarding the specific drug paraphernalia recovered by the police at Stephenson's home—including a water bong, glass pipe, pills, white powder residue, and a small scale—and that the specific drug Stephenson used that night was marijuana. The trial court did not admit the evidence.

Booker was convicted on October 30, 2013. At a hearing on November 18, 2013, the trial court sentenced Booker to twenty years imprisonment in the Indiana Department of Correction. He now appeals his conviction and sentence.

**Discussion and Decision**

Juror Contact with State's Witness

Article 1, Section 13 of the Indiana Constitution guarantees a defendant's right to an impartial jury. May v. State, 716 N.E.2d 419, 421 (Ind. 1999). A biased juror must be dismissed. Id. Indiana Trial Rule 47(B) provides in part that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Ind. Trial Rule 47(B). Trial courts have significant leeway under Trial Rule 47(B) in determining whether to replace a juror with an alternate. Jervis v. State, 679 N.E.2d 875, 881 (Ind. 1997). Trial courts see jurors firsthand and are in a much better position to assess a juror's ability to serve without bias or intimidation and decide the case according to law. Id. at 881-82. A trial court's decision to replace a juror with an alternate is reviewed for an abuse of discretion. Barnes v. State, 693 N.E.2d 520, 523 (Ind. 1998). "An abuse of discretion occurs only if the

decision placed the defendant in substantial peril." Harris v. State, 659 N.E.2d 522, 525 (Ind. 1995).

Booker argues that the trial court abused its discretion when it denied his request to replace Moore with an alternate juror. The timely disclosure of a juror's casual relationship with a witness, coupled with an assertion that the juror will remain impartial, adequately protects a defendant's right to an impartial jury. Spears v. State, 811 N.E.2d 485, 489 (Ind. Ct. App. 2004) (citing McCants v. State, 686 N.E.2d 1281, 1285 (Ind. 1997)). This is the case here, where Moore and Terhune knew each other casually because he was her husband's boss. The court interrogated Moore outside the presence of the other jurors regarding their relationship. Moore testified that she would judge Terhune as any other witness and that her association with him would not inhibit her ability to be fair and impartial.

Booker further argues that "the prejudice resulting from [Moore's] association with [Terhune] may be impossible to remove." (Appellant's Br. at 5). He cites May, which held that "juror conduct *with witnesses* occurring *contemporaneous to the trial proceeding* are of a different character and more directly implicate the public's trust and confidence in our criminal justice system." 716 N.E.2d at 422. "Under certain circumstances, the extra-judicial juror conduct is so fundamentally harmful to the appearance of the fair and impartial administration of justice, it will be considered 'prima facie prejudicial' to the defendant, irrespective of whether the communication concerned a matter pending before the jury." Id. (citations omitted).

5

In <u>May</u>, a material State's witness, the arresting police officer, struck up a conversation with a juror during a recess that occurred in the middle of the witness's cross-examination. <u>Id.</u> The conversation culminated in the juror inviting the witness to the juror's home the weekend after trial. <u>Id.</u> at 423. The witness did not disclose to the court the full extent of the conversation, which was only discovered after defense counsel questioned the juror. <u>Id.</u> at 422. The trial court did not dismiss the juror, but our supreme court held that the juror displayed such comradery and potential partiality that he should have been replaced. <u>Id.</u> at 422-23.

Here, unlike the facts in <u>May</u>, Terhune was a minor witness who testified only that Booker suddenly quit employment on July 5, 2011. Moore initiated a brief conversation with Terhune before she knew he was a witness. The trial court found that Moore "terminated the conversation when she realized that he might've been up here [to testify]." (Tr. at 192.) The conversation was immediately disclosed. After the court interrogated Moore and was satisfied that she could remain impartial, the court admonished her not to speak to the other jurors about the incident. Thus, we cannot say Moore's incidental contact with Terhune rises to the level of prima facie prejudice. Accordingly, the trial court did not abuse its discretion in declining to replace Moore with an alternate juror.

Exclusion of Evidence

Booker also argues that the trial court abused its discretion by excluding evidence related to Stephenson's drug use that Booker sought to introduce on cross-examination. The right to cross-examine witnesses is guaranteed by both the Sixth Amendment to the United

6

States Constitution and Article 1, Section 13 of the Indiana Constitution. Jenkins v. State, 729 N.E.2d 147, 148 (Ind. 2000). This right, however, is subject to reasonable limitations placed at the discretion of the trial court. Id. (citing McQuay v. State, 566 N.E.2d 542, 543 (Ind. 1991)).

Pursuant to Indiana Evidence Rule 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. Evid. R. 401. Relevant evidence is generally admissible. Evid. R. 402. However, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

The standard for relevancy under Evidence Rule 401 is liberal, and we review a trial court's ruling as to relevance for an abuse of discretion. Konopasek v. State, 946 N.E.2d 23, 27 (Ind. 2011). An abuse of discretion occurs where the court's decision is clearly against the logic and effect of the facts and circumstances before it. Southern v. State, 878 N.E.2d 315, 321 (Ind. Ct. App. 2007), trans. denied.

The trial court excluded Booker's proffered evidence of the drug paraphernalia found in Stephenson's home and Stephenson's marijuana use. Booker argues that this evidence was relevant because it pertains to Stephenson's ability to perceive and recall the events to which she testified. Booker also contends that the jury's ability to assess Stephenson's credibility was impaired by the court's exclusion of the evidence. Although our supreme

7

court has consistently upheld trial court decisions excluding evidence of a witness's past drug use as irrelevant, Jenkins, 729 N.E.2d at 149, Booker correctly asserts that a witness's prior drug use "may be relevant as to (1) the witness'[s] ability to recall the events on the date in question, (2) the witness'[s] inability to relate the facts at trial, or (3) the witness'[s] mental capacity." West v. State, 755 N.E.2d 173, 185 (Ind. 2001).

In this case, the jury heard Stephenson's testimony on direct examination that she used drugs and was drinking the night before the robbery. Stephenson also testified that her drug use did not affect her ability to recognize and identify Booker and Hayes-Patterson because she was "completely sober" when they came to her home after the robbery. (Tr. at 217.) Absent Booker's proffered evidence, the jury was still able to assess Stephenson's credibility in light of her admitted drug use. Therefore, the trial court did not abuse its discretion in excluding the evidence as unfairly prejudicial, misleading to the jury, or needlessly cumulative. See Evid. R. 403.

### Sentence

Article 7, Section 6 of the Indiana Constitution grants this Court authority to independently review and revise a sentence imposed by the trial court. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The analysis is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. Conley v. State, 972 N.E.2d 864, 876 (Ind. 2012). The

8

principal role of our review is to leaven the outliers, and our review is very deferential to the trial court. Id. The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. Id.

Booker was convicted of a Class B felony, and sentenced to the maximum term of twenty years imprisonment. I.C. § 35-50-2-5 (2011). Booker contends that his sentence was inappropriate because it was disproportionate to Hayes-Patterson's ten year sentence imposed pursuant to a plea agreement. Specifically, Booker argues his sentence is comparatively inappropriate because Hayes-Patterson was "more culpable" than he. (Appellant's Br. at 10). "When a defendant proceeds to trial and his accomplice pleads guilty, 'the sentences need not be identical' and 'there is no requirement of consistency.'" Williams v. State, 631 N.E.2d 485, 488 (Ind. 1994) (quoting Morgan v. State, 419 N.E.2d 964, 969 (Ind. 1981)). The fact that Hayes-Patterson received a lesser sentence for the same crime pursuant to a plea agreement does not bear on the appropriateness of Booker's sentence.

As to the nature of the offense, Booker robbed a bank at gun point while putting bank employees and customers in fear for their lives. Booker actively participated by jumping behind the counter and absconding with more than $5,000. Regarding the character of the offender, Booker has a well-documented criminal history. In his youth, he was on three occasions adjudicated delinquent of acts that, if committed by an adult, constituted felony possession of cocaine (once as a Class A felony and once as a Class D felony) and misdemeanor criminal recklessness. As an adult, Booker has felony convictions for burglary, theft, robbery, and robbery resulting in bodily injury. In addition to numerous other

9

encounters with law enforcement, Booker has violated probation multiple times. In light of the fact that Booker's conviction for armed robbery in this case represents his fifth felony conviction for a theft crime, we cannot say that Booker's sentence was inappropriate.

## Conclusion

We hold that the trial court did not abuse its discretion by declining to replace a juror with an alternate or by excluding evidence related to a witness's drug use. We also conclude that Booker's sentence is not inappropriate.

Affirmed.

NAJAM, J., and PYLE, J., concur.