**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND B. BAKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 24A01-1304-CR-163 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable Clay M. Kellerman, Judge
Cause No. 24C02-1203-FD-343

**December 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Following a jury trial, Raymond Baker was convicted of two counts of neglect of a dependent, both Class D felonies, and sentenced to two years on each count, to be served concurrently, with six months suspended. Baker appeals his convictions, raising the sole issue of whether sufficient evidence was presented to support his convictions. Concluding there was sufficient evidence that Baker committed neglect of a dependent as charged, we affirm.

## Facts and Procedural History

Cynthia Blanton is a school bus driver for Franklin County Schools. Baker's two daughters, A.B. and H.B., ride Blanton's bus. On the morning of February 27, 2012, A.B. and H.B. missed the bus. Admittedly upset with the girls for missing the bus, Baker initially told them they would have to stay home from school that day but eventually decided to take them to the school. At some point, Baker realized he might be able to catch the bus en route rather than going all the way to the school. Blanton testified that as she drove north toward the school on Johnson Fork Road, a car traveling south on Johnson Fork Road was in her lane. She was approaching a T-intersection with Sharptown Road to her right and assumed the car was going to try to make a left turn onto Sharptown Road in front of the bus. She honked her horn, but the car remained in her lane. To avoid what she felt was an inevitable collision, Blanton steered the bus into the southbound lane and went left of the car, narrowly avoiding a telephone pole on the west side of Johnson Fork Road directly opposite Sharptown Road. Rather than turning onto Sharptown Road as Blanton had assumed it would, the car came to a stop at an angle alongside the bus, and A.B. and H.B. stepped out and walked to the doors of the bus.

Through the closed doors, Blanton told the girls to go back to their car because she was not allowed to pick them up at an unscheduled stop. Additionally, Blanton was frightened by the encounter and was unwilling to open the doors to Baker. Regardless, Blanton testified that the car was stopped close enough to the bus that she would have been unable to open the doors if she had been inclined to. Baker became angry, and Blanton testified that he swore at her. Baker denied swearing at Blanton but admitted giving her the finger. A.B. and H.B. got back in the car, and according to a student on the bus that day, Baker pulled away before the girls had their doors shut. Blanton reported the incident to the school when she arrived and provided a list of students on the bus at the time.

The State charged Baker with two counts of neglect of a dependent, Class D felonies, for knowingly or intentionally placing his two daughters in a situation that endangered their lives when he "drove his automobile at a high rate of speed directly in the path of a school bus" while his daughters were passengers in the car. Appellant's Appendix at 45-46. Baker was also charged with thirty-six counts of criminal recklessness, Class D felonies, one count for each identified person on the bus. A two-day jury trial was held in February 2013. The State made the following comments during its closing argument:

> The Neglect of a Dependent; the Defendant knowingly or intentionally placed [A.B. and H.B.] in a situation that actually and appreciatively endangered the life or health and when they're a dependent. . . . Endangered their life or health; you heard [a student on the bus] testify that because of the way the car was over in this lane, the bus was going to hit right at her door. That was . . . that was lights out and she didn't see any way to avoid it, she was so appreciative the way this happened. If you look at the . . . the seconds [on a video from the bus], this happened quickly, very quick . . . . [Blanton] blew the horn, went to the left; veered to the left

3

and stopped and then who took off first?  It's on video, he did.  He sped off, was he angry?  The kids weren't even in the car.  They're telling me they had their seatbelt on; they didn't have an opportunity to put their seatbelt on, they didn't get their door closed.  It's impossible. . . . We didn't hear conflicts in the testimony on what happened when this Criminal Recklessness act occurred.  Remember I told you that's our burden of proof, those elements only.  Not what happened before, not what happened after.  I'm saying it's important, but when it comes down to it, did the State prove it's [sic] case beyond a reasonable doubt?  What happened in that five, eight seconds . . . .  But when it came, come [sic] to the crucial part of the testimony, did they deviate at all?  No.  That bus was coming at them, a crash was imminent, there's no way to avoid it.  That's never been deviated upon.

Transcript at 319-21.  A trial court entry for the second day indicates that after retiring to deliberate, the jury "notifies the Court that it has a question.  Both the State of Indiana and the Defendant were notified and agreed as to the appropriate response would be to instruct the jury to re-read the instructions."  Id. at 82.  The question was "Can it be neglect of a dependent when Baker left the scene with his girls and doors were not closed vs. as stated in Count 37 & 38."  Id. at 122.  After being instructed to re-read the jury instructions, the jury found Baker not guilty of the counts of criminal recklessness but guilty of the two counts of neglect of a dependent.  Baker now appeals.

Discussion and Decision

I.  Standard of Review

Our standard of reviewing a sufficiency claim is well-settled:

We do not reweigh the evidence or judge the credibility of the witnesses, and respect the jury's exclusive province to weigh conflicting evidence. We consider only the probative evidence and reasonable inferences supporting the verdict.  We affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

Delarosa v. State, 938 N.E.2d 690, 697 (Ind. 2010) (quotations and citations omitted).

4

## II. Evidence of Neglect of a Dependent

Baker contends the evidence was insufficient to support the jury's verdict of guilty of neglect of a dependent, as evidenced by the jury question indicating it was seeking facts other than those alleged in the information as a basis for a guilty verdict. Specifically, Baker contends that "[b]ecause the jury did not find that the State produced sufficient evidence that Baker committed the crime as charged, the jury erred in returning a verdict of guilty." Brief of Appellant at 11.

It has long been held that appellate courts "will not speculate as to the wisdom, motive, or reasoning of the jury in reaching its verdict." Wallace v. State, 492 N.E.2d 24, 25 (Ind. 1986). We may only ascertain whether there was sufficient evidence from which a reasonable inference may be drawn from the evidence which could have allowed a finding of guilt. See Delarosa, 938 N.E.2d at 697. A conviction for neglect of a dependent requires the State to prove that "[a] person having the care of a dependent . . . knowingly or intentionally . . . places the dependent in a situation that endangers the dependent's life or health . . . ." Ind. Code § 35-46-1-4(a)(1). The State alleged in the information against Baker that he committed neglect of dependent by driving his vehicle at a high rate of speed directly in the path of a school bus. Here, there were at least two eyewitnesses who testified that Baker drove a vehicle on the wrong side of the road directly in the path of a school bus. There is no question that his daughters were passengers in the vehicle at the time. In addition, video of the incident as recorded by cameras on the bus was shown to the jury. From that evidence, a reasonable inference that Baker endangered his daughters' lives could be made.

We also would not characterize the State's case as Baker does: that the State "emphasized" the evidence that Baker drove away from the scene before his daughters were securely in the car. Br. of Appellant at 10-11. The State did elicit testimony from both Blanton and a student on the bus that Baker drove away before the girls' doors were shut, and the State did mention that evidence in its closing argument. However, in the context of all of the testimony and the entirety of the State's closing argument, the references to Baker's leaving were brief and meant to comment on Baker's general demeanor and to point out credibility issues with the girls' testimony. See Tr. at 319-20 ("He sped off, was he angry? . . . [The girls are] saying, 'Yeah, we put our seatbelt on, yeah we didn't get the door closed yet.' Bologna, nothing makes sense. Use your common sense, your life's experiences, your knowledge.").

Given that there was sufficient evidence adduced at trial to support the verdict, the fact that the jury asked a question about other evidence that could also prove the crime is immaterial. The trial court responded to the jury's question by telling it to reread the court's instructions. The jury instructions are not included in the record before us, either in written or transcribed form, but we believe it safe to say the instructions included the statutory definition of neglect of a dependent, the text of the charging information, and instructions regarding the burden of proof and the "reasonable doubt" standard. A jury is presumed to follow the court's instructions. Morgan v. State, 903 N.E.2d 1010, 1019 (Ind. Ct. App. 2009), trans. denied. It would not be uncommon for there to be evidence beyond that specified in the information which could prove the crime, but we are concerned only with whether there is sufficient evidence to prove the crime as charged, and in this case, we hold that there was. To say, as Baker does, that the jury question

6

indicates the jury did not find that the facts alleged by the information were sufficient to prove the crime but found him guilty anyway is impermissible speculation into the jury's fact-finding process. See Paul v. State, 888 N.E.2d 818, 823 (Ind. Ct. App. 2008) (noting the defendant's argument "requires that we speculate on the jury's thought process, which we do not do."), trans. denied.

## Conclusion

Sufficient evidence was presented from which the jury could have found Baker guilty beyond a reasonable doubt of two counts of neglect of a dependent, and the judgment is therefore affirmed.

Affirmed.

RILEY, J., and KIRSCH, J., concur.