Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2014, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES GOOCH, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-PC-781 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G23-0712-PC-267464

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Charles Gooch brings this rare second direct appeal from his conviction for dealing in a controlled substance, as a Class B felony. Gooch raises a single issue for our review, namely, whether the trial court abused its discretion when it removed a juror from his jury. We affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

The facts underlying Gooch's conviction were stated by this court in his first direct appeal:

> On December 13, 2007, Special Agent Matthew Hall, an employee of United States Immigrations and Customs Enforcement, was on duty at a FedEx shipping facility in Indianapolis. He saw a suspicious parcel that had been mailed by Jason Brown in Bronx, New York[,] to John Brown at an address in Indianapolis. Agent Hall had his drug sniffing dog examine the parcel. The dog alerted on the parcel, which indicated that the parcel contained illegal narcotics.
>
> Agent Hall obtained a search warrant for the parcel, opened the parcel, and discovered a large quantity of pills that he believed to be Ecstasy. Based upon this discovery, Agent Hall obtained an "anticipatory" search warrant for the destination address on the parcel. Next, Agent Hall changed into a FedEx uniform, assembled a team of police officers, and went to the destination address listed on the parcel, which was an apartment.
>
> When Agent Hall entered the apartment building and knocked on the apartment door, a man later identified as Gooch answered. Agent Hall asked Gooch if he was John Brown, and Gooch said yes. Gooch kept looking at the front door to the apartment building and was visibly shaking. He would not make eye contact with Agent Hall, who asked him if everything was okay. Gooch did not respond, but he took the parcel and signed for it. Gooch signed as "Joe" with an illegible last name. Agent

---

[1] Because we affirm the trial court's judgment on the merits of Gooch's appeal, we need not consider the State's argument on cross-appeal or Gooch's response that the State's cross-appeal is improper.

Hall returned to his van, radioed a description of Gooch to his team, and drove away from the apartment building.

Meanwhile, police officer Marc Campbell was watching the front of the apartment building from an unmarked car. He saw Agent Hall leave the building. A couple of minutes later, Gooch left the building carrying what appeared to be a box under his shirt. Officer Campbell got out of his car and identified himself as a police officer. Gooch began to run but stopped, pulled out the parcel and threw it on the ground, and laid down on the ground with his hands out. Subsequent testing of the pills contained in the parcel demonstrated that Gooch had received six hundred and ninety-eight tablets of Ecstasy.

The State charged Gooch with dealing in a controlled substance and several other offenses. . . .

Gooch v. State, No. 49A02-1004-CR-382, 939 N.E.2d 126, at *1 (Ind. Ct. App. Dec. 7, 2010) (citations to the record omitted).

During the course of Gooch's jury trial, Juror Number Nine informed the court that he and Gooch "share the same barber." Trial Transcript at 108. The court and the attorneys then engaged Juror Number Nine in the following colloquy:

THE COURT: Have a seat there, sir. All right, and you believe that you and the defendant have met before at this point?

JUROR: Yes sir.

THE COURT: Okay.

JUROR: I don't know him personally. But I have seen him.

THE COURT: Okay. And how have you seen him?

JUROR: We share the same barber.

THE COURT: Okay, is that going to affect your ability to be fair and impartial here?

3

JUROR: Well, with being the only African-American on the jury, I would believe it would.

THE COURT: Okay. You don't think that you can be a fair juror at this point?

JUROR: Yes, I could be as fair as I could be.

THE COURT: I'm a little confused then?

JUROR: I mean . . . as fair as I could under the situation, Your Honor.

THE COURT: Well, I mean does the fact that you know the defendant going [sic] to affect your thinking about this case? Has it affected your thinking?

JUROR: It hasn't affected my thinking thus far. Knowing the defendant[. J]ust that the jury selection has.

THE COURT: State, do you have any questions for the juror?

MR. MILLER [for the State]: Yes, Your Honor.

QUESTIONS BY STATE:

Q      Sir, what do you mean that the jury selection has?

A      I am the only African[-]American on the jury. I don't see that as a jury of his peers, not me personally.

Q      And do you believe that being the only African-American on the jury puts special attention on you as a member of the panel?

A      Yes, I do.

Q      In what way?

A      I just believe it does. You would have to be an African-American to understand that.

Q      I know, sir[,] that's why I am asking you to explain it. Because the defendant is African[-]American as well . . .

A    Yes.

Q    And do you believe that you being the only African[-]American on the panel and the defendant being African[-]American and the fact that you share the same barber could affect you being fair and impartial?

A    I don't think it could really affect me being fair and impartial, but what I'm saying is when deliberations go on which things will be said. They aren't going to be impartial. I'm more or less going to feel a certain way, a different way. Being the only African[-]American on the jury.

THE COURT:    Defense?

QUESTIONS BY DEFENSE[:]

Q    Sir, have you ever spoken to Mr. Gooch before?

A    We have [s]aid hello to one another. I didn't recognize him with his full beard. Until I really looked at him from my point over here and I realized that I have seen him.

Q    [W]hen was the last time that you saw Mr. Gooch?

A    Maybe a couple months ago. Maybe six or seven months ago.

A    And you indicated earlier that you did not consider him a friend of yours . . . .

Q    No . . . .

* * *

A    You don't know anything about his persona[l] life?

A    No.

Q    And he doesn't know anything about yours?

A    No.

Q    Is the fact that you know Mr. Gooch f[rom] the barber shop put [sic] you in a position that you can't give him a fair trial and base your verdict solely on the evidence and the law as the Judge tells you?

5

A      I could do that.  I could do [t]hat, but could the rest of [t]he jurors do that with all of them being white and him being black?

Q      I understand but . . . you believe you could do that?

A      Yeah, I could do that.

Id. at 109-13.

Following that colloquy, the State requested the juror's removal from the jury.  In particular, the State asserted that

> we expect the evidence that will be presented is that the defendant, at the time this juror observed him out in the community[,] had a warrant out for his arrest.  That he was a fugitive . . . and . . . that [the juror] saw him out in public I think would affect his deliberations . . . .

Id. at 113.  Gooch's attorney opposed the juror's removal.  The trial court removed Juror Number Nine from the jury and replaced him with an alternate juror.  Thereafter, the jury found Gooch guilty of dealing in a controlled substance, as a Class B felony, and the trial court entered its judgment of conviction accordingly.

In his first direct appeal, Gooch's appellate counsel argued that the trial court abused its discretion when it refused to admit certain testimony into evidence.  Gooch's counsel also argued that the trial court had deprived him of his right to present a complete defense to the charges against him.  Gooch's counsel did not challenge the trial court's removal of Juror Number Nine, and we affirmed Gooch's conviction.

Thereafter, Gooch filed a petition for post-conviction relief, which he later twice amended.  In his second amended petition, Gooch asserted that his counsel's failure to raise the removal of Juror Number Nine in Gooch's direct appeal denied Gooch his

6

constitutional right to effective counsel. After a hearing, the post-conviction court concluded that Gooch's appellate counsel rendered ineffective assistance by not raising this issue in Gooch's first direct appeal. As relief, the court permitted Gooch "to a new appeal on the issue of removal of [J]uror [N]umber 9." Appellant's App. at 177. This second direct appeal ensued.

## DISCUSSION AND DECISION

Gooch asserts that the trial court abused its discretion when it replaced Juror Number Nine with an alternate juror. As our Supreme Court has explained:

> Article I, § VIII of the Indiana Constitution guarantees a defendant's right to an impartial jury; therefore, a biased juror must be dismissed. Indiana Trial Rule 47(B) in part provides that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Trial courts have broad discretion in determining whether to replace a juror with an alternate, and we will only reverse such determinations where we find them to be arbitrary, capricious or an abuse of discretion. Campbell v. State (1986), Ind., 500 N.E.2d 174, 181; Woolston v. State (1983), Ind., 453 N.E.2d 965, 968, reh'g denied. An abuse of discretion occurs only if the decision placed the defendant in substantial peril. Woolston, 453 N.E.2d at 968.

Harris v. State, 659 N.E.2d 522, 525 (Ind. 1995) (alteration original). "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Skilling v. United States, 130 S. Ct. 2896, 2918 (2010); see Morgan v. State, 903 N.E.2d 1010, 1019 (Ind. Ct. App. 2009), trans. denied. A juror's bias or prejudice for or against the

7

defendant justifies the removal of that juror. Jackson v. State, 597 N.E.2d 950, 960 (Ind. 1992).

We disagree with Gooch that the trial court erred when it replaced Juror Number Nine with an alternate juror. While Gooch asserts that Juror Number Nine was adamant that he could impartially assess the evidence and the law, his comments to the court and counsel were in fact more equivocal. He repeatedly expressed concern not over the facts of the case and the law but in the racial composition of the jury vis-à-vis Gooch. Indeed, at one point Juror Number Nine expressly stated that he would be only "as fair as [he] could" in light of the racial composition of the jury. Trial Transcript at 109. The trial court's decision to remove Juror Number Nine was neither arbitrary nor capricious.

Moreover, the trial court replaced Juror Number Nine with an alternate juror. At no point before the trial court or in this appeal has Gooch suggested that the alternate juror was incapable of executing his duties and responsibilities as a full member of the jury. Thus, Gooch cannot demonstrate that the trial court's decision to replace Juror Number Nine with the alternate juror resulted in substantial peril to Gooch. Accordingly, we cannot say that the trial court's decision to replace Juror Number Nine with the alternate juror was an abuse of the court's discretion.

Affirmed.

BAKER, J., and CRONE, J., concur.